Perrielin Sessions
113 Calle Jalisco
Vacaville, Solano
California, 95687
(707) 372-3064
Perriewinkle37@gmail.com

FILED
APR 17 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______
DEPUTY CLERK

# UNITED STATES DISTRICT COURT OF CALIFORNIA EASTERN DISTRICT

## FIRST AMENDMENDED COMPLAINT 42 U.S.C. 1983

CASE NO. 2:25-CV-02936 DAD CKD

PERRIELIN SESSIONS, )

Plaintiff, )

V

KANISHA HILL; KATRINA LOHRE; CECILIA LOPEZ; ) JURY TRIAL DEMANDED
VERONICA ESTRELLA; BIANCA LOPES; BRIAN )
BOUKNIGHT; RICHARD LIVINGSTON JR.; )
REBECCA CURCURO; MAGI CHANG; and DOES 1–25, )
Defendants. )
_________________________________________ )

Plaintiff, Perrielin Sessions, alleges as follows:

**I. PRELIMINARY STATEMENT**

1. This is a civil action for damages and declaratory relief to redress deprivations under color of state law of rights, privileges, and immunities secured by the

Constitution and laws of the United States, including the First, Fourth, and Fourteenth Amendments, in violation of 42 U.S.C. § 1983.

2. Plaintiff brings this action following the removal of her minor child, P.P., on or about August 17, 2022, and subsequent dependency proceedings that terminated her parental rights, based on materially unreliable and fabricated evidence, unconstitutional procedures, and deliberate indifference to her and her child's rights.

3. Plaintiff seeks compensatory and punitive damages, declaratory relief, costs, and all other relief available by law against the individual Defendants.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in Solano County, California, within this District.

## III. PARTIES

### A. Plaintiff

7. Plaintiff Perrielin Sessions is, and at all relevant times was, the biological mother of minor child P.P., residing at 113 Calle Jalisco, Vacaville, CA 95687, phone (707) 372-3064, email perriewinkle37@gmail.com.

### B. Defendants

8. Each defendant is sued in their individual capacity only. At all relevant times, each defendant was employed by Solano County Social Services, acting under color of state law. Defendants' addresses and contact information are as follows:

a. **Kanisha Hill**
Social Worker III
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 386-5956

b. **Katrina Lohre**
Social Worker III
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 631-0480

c. **Cecilia Lopez**
Social Worker III
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 784-8443

d. **Veronica Estrella**
Social Worker III/Supervisor
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 784-8910 (work)
(707) 416-6402 (cell)

e. **Bianca Lopes**
Social Worker Permanency
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 759-0796

f. **Brian Bouknight**
Supervisor
Solano County Social Services

275 Beck Ave
Fairfield, CA 94533
(707) 398-3023

g. **Richard Livingston Jr. II**
Supervisor
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 784-8050

h. **Rebecca CurCuro**
Supervisor
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 784-8050

i. **Magi Chang**
Supervisor
Solano County Social Services
275 Beck Ave
Fairfield, CA 94533
(707) 784-8050

j. **DOES 1–25**
The true names and capacities of Defendants sued herein as DOES 1–25 are presently unknown to Plaintiff, who will amend this Complaint to allege their true names and capacities when ascertained.

**C. Doe Defendants**

9. Each Doe Defendant was, at all relevant times, an employee or agent of Solano County or related entities, whose acts or omissions caused or contributed to the constitutional violations alleged herein.

**IV. FACTUAL ALLEGATIONS**

A. Removal Was Driven by Unconfirmed Toxicology and False Narrative Building

10. On or about August 17, 2022, Defendants relied on a presumptive urine toxicology screen allegedly indicating amphetamine or methamphetamine exposure in Plaintiff's child, P.P. The hospital records reflected that the toxicology result was a screening result and not a confirmed definitive toxicology finding.

11. Plaintiff alleges that P.P.'s contemporaneous vital signs and clinical presentation did not establish a confirmed methamphetamine toxidrome and did not justify treating the screening result as definitive proof of methamphetamine intoxication.

12. The initial complaint or referral arose at approximately 1:33 a.m., but Defendant Kanisha Hill did not arrive until approximately nine hours later. This delay undermined any claim that immediate exigency required emergency removal without full and reliable substantiation.

13. No confirmatory test was performed on the specimen, which was later discarded. Despite this, Defendants treated the presumptive screen as if it were conclusive proof.

14. The initial medical narrative included an accidental-ingestion theory tied to Father's medication, and the Department later acknowledged Carvedilol as the likely medication involved.

15. Defendant Veronica Estrella's initial case-plan harm/danger statement stated that the minor was in Father's care when the minor allegedly ingested the substance.

16. Defendant Kanisha Hill allegedly fabricated, repeated, endorsed, or caused to be recorded the accusation that Plaintiff was a "known drug user" in an initial report dated August 22, 2022, without competent corroboration and based on unverified hearsay from Plaintiff's former husband.

17. Plaintiff moved to Solano County in 2020, had no drug-related criminal history, no drug-related charges, and no medical records establishing a chronic substance-abuse history.

B. Early Proceedings and Notice Defects

18. The first post-removal hearing was held on August 19, 2022, but Plaintiff was never properly informed of that hearing and was deprived of the opportunity to appear, contest removal, present evidence, and be heard at the earliest stage.

19. The jurisdiction and disposition hearing was not held until approximately 5.5 months after removal, substantially exceeding what is consistent with fair dependency adjudication and prolonging separation without timely merits determination.

20. On October 13, 2022, both parents objected to further delay and demanded timely adjudication; the juvenile court later acknowledged continued delay was "not appropriate."

C. Kinship Placement Was Obstructed by False or Misleading Reporting

21. On or about September 26, 2022, maternal grandparents Perry DeSersa and Joann DeSersa were referred to the Placer County RFA process for placement of P.P.

22. In a Jurisdiction/Disposition Report dated October 13, 2022, Defendant Estrella reported that background-check information prevented emergency RFA and that on October 5, 2022, the grandparents withdrew because Mother would be moving into their home. Plaintiff alleges those reported reasons were false, misleading, or materially incomplete.

23. There was no legitimate background-check barrier because the grandparents had already been approved by Placer County. California dependency law did not impose a categorical rule forbidding Plaintiff from residing in the same household as a relative placement, yet the case was handled as though such a bar existed.

24. Defendant Estrella falsely stated that Plaintiff's parents had backed out of taking placement and denied placement with P.P.'s biological sister based on the stated reason of distance, though she lived only 1.5 hours away in Auburn, California.

25. These acts obstructed family-preserving and less restrictive placement alternatives.

D. ICWA Inquiry and Notice Were Not Handled Lawfully

26. Plaintiff repeatedly informed Defendants of Sioux ancestry and first made Indian heritage known to the court on or about August 22, 2022.

27. Defendant Estrella's Jurisdiction/Disposition Report (October 13, 2022) stated that maternal grandfather confirmed he was a registered Indian.

28. This information triggered, at minimum, a strong reason to believe and potentially a reason to know that ICWA-related inquiry and notice duties were implicated, yet Defendants failed to ensure accurate and complete inquiry and notice.

E. P.P. Suffered Repeated Harm While in Foster Care and Defendants Had Notice

29. During the dependency period, P.P. was moved through approximately six placements.

30. From August 25, 2022 to November 28, 2022, P.P. was placed with foster caregiver Jessica Brayton, where he experienced repeated illness, including fevers, congestion, respiratory symptoms, and diaper-rash concerns.

31. The Department's December 6, 2022 response to JV-180 admitted ongoing concerns regarding such symptoms since September 22, 2022 and acknowledged reports of bruising and marks on multiple dates.

32. Plaintiff documented bruising and marks on multiple parts of P.P.'s body while in foster care; Defendants minimized or failed to act meaningfully upon those repeated injuries.

33. On October 31, 2022, P.P. sustained a head injury in foster care, documented on November 1, 2022 as a head injury with a goose egg and bruise near the left eye; the mechanism of injury was not fairly or fully presented.

34. On December 16, 2022, P.P. suffered a severe right pinky finger injury requiring emergency surgery.

35. Defendants Lopez, Hill, Lohre, Lopes, Bouknight, Livingston Jr., and CurCuro participated in, ratified, or failed to correct unsafe foster placements, and failed to disclose a DUI-related incident associated with Amy Russell's placement for approximately six months.

36. Defendant Lohre received direct provider notice of placement safety concerns and that P.P. was asking for his mother yet failed to adequately intervene.

37. A CASA report (February 20, 2024) stated that P.P.'s mental health therapist reported that P.P. appeared more "free and less restricted" after removal from the resource home associated with the DUI-related incident.

F. Exculpatory Facts Were Documented but Not Fairly Integrated

38. The Department's December 6, 2022, JV-180 response documented a November 29, 2022, home inspection, finding the home clean, organized, and free of hazards, with no drugs or paraphernalia in plain view, contradicting the ongoing danger narrative used against Plaintiff.

39. Defendants failed to reassess the case fairly in light of these facts and continued to press a narrative of parental danger while minimizing harm in foster care.

G. Plaintiff Engaged in Services but Defendants Used Shifting and Unfair Standards

40. Plaintiff participated in drug testing, parenting, therapy, and support programming, and completed the Triple P parenting program (March 7–July 10, 2023).

41. Plaintiff filed JV-180 petitions (November 9, 2022, and April 9, 2023); the April petition was denied.

42. Defendants failed to provide reasonable reunification services and discounted repeated negative drug tests obtained through Kaiser rather than the Department's preferred channel, treating alleged missed tests as presumptively positive and minimizing repeated negative tests.

43. After reunification services were terminated, Plaintiff continued testing through Dependency Drug Court, but Defendants used this against her rather than crediting it as evidence of sobriety and compliance, imposing shifting and undisclosed compliance standards.

H. Defendants Restricted Plaintiff's Ability to Present Evidence and Participate Meaningfully

44. Plaintiff was not given fair access to drug-test evidence and related materials used against her.

45. Defendants of Lopez, Hill, Lohre, Lopes, Bouknight, Livingston Jr., and CurCuro prevented or burdened Plaintiff's ability to present favorable evidence, and Bouknight and Lopez withheld information concerning out-of-county transfer and placement.

I. Visitation Was Burdened and Then Used Against Plaintiff

46. Plaintiff's visits with P.P. were repeatedly disrupted or canceled for reasons outside Plaintiff's control, including placement and logistical problems. Defendants failed to maintain visitation at a level consistent with reunification.

47. Weakened contact was later used against Plaintiff in permanency proceedings. All contact between Plaintiff and P.P. was terminated on or about November 20, 2024, without constitutionally adequate justification.

J. Termination Proceeded Without Fundamental Fairness

48. The Welfare and Institutions Code § 366.26 hearing proceeded without required statutory prerequisites or findings under WIC § 366.26(c)(1). Cumulative procedural defects deprived Plaintiff of fundamentally fair procedures.

**V. LEGAL STANDARDS VIOLATED**

49. Defendants' conduct, as alleged above, violated clearly established constitutional, statutory, and procedural rights, including but not limited to:

- Mathews v. Eldridge, 424 U.S. 319 (1976): The Due Process Clause requires adequate notice and a meaningful opportunity to be heard.

- Armstrong v. Manzo, 380 U.S. 545 (1965): Parental due process rights in termination proceedings.

- In re James Q., 19 Cal.App.4th 1542 (1993): California appellate authority requiring fundamental fairness in dependency proceedings.

- California Rules of Court, Rule 5.534: Governing dependency proceedings and procedural protections.

- Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963: Mandates proper inquiry and notice where there is reason to know a child is an Indian child.

- Federal Rule of Civil Procedure 60(b)(4): Provides that a judgment is void if the issuing court lacked jurisdiction; the judgment was obtained through fraud, or proceedings were fundamentally unfair.

50. A judgment obtained through fraud, suppression, or denial of due process is void. Rule 60(b)(4) applies where the court lacked jurisdiction; the judgment was obtained through fraud, or the proceedings were fundamentally unfair.

51. Plaintiff alleges the state court lacked jurisdiction due to due process violations and structural errors, including, but not limited to:

- Misapplication of In re Caden C.
- Misapplication of Welfare & Institutions Code § 388
- Judicial confusion and lack of full and accurate information necessary for a fair proceeding

**VI. CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

*Fourteenth Amendment – Judicial Deception, Fabrication, and Omission of Material Evidence*

(42 U.S.C. § 1983; Against Defendants Hill, Bouknight, Estrella, and

DOES 1–25)

52. Plaintiff incorporates all prior paragraphs.

53. Defendants knowingly or recklessly presented materially misleading toxicology information, omitted exculpatory facts, and advanced false stigmatizing allegations, depriving Plaintiff of clearly established Fourteenth Amendment rights.

54. As a direct and proximate result, Plaintiff suffered loss of familial association, emotional distress, reputational harm, and other damages.

**SECOND CLAIM FOR RELIEF**

*Fourteenth Amendment – Unlawful Interference With Familial Association / Unlawful Removal*

(42 U.S.C. § 1983; Against Defendants Hill, Lohre, Lopez, Estrella, Bouknight, and DOES 1–25)

55. Plaintiff incorporates all prior paragraphs.

56. Defendants deprived Plaintiff of her clearly established liberty interest in the care, custody, and companionship of her child without reliable evidence or due process.

57. As a direct and proximate result, Plaintiff suffered loss of relationship with her child and other damages.

**THIRD CLAIM FOR RELIEF**

*Fourteenth Amendment – Procedural Due Process*

(42 U.S.C. § 1983; Against All Defendants)

58. Plaintiff incorporates all prior paragraphs.

59. Defendants denied Plaintiff constitutionally fair procedures by relying on unreliable evidence, failing to provide proper notice, denying fair access to evidence, using shifting standards, and contributing to prejudicial delay.

60. As a direct and proximate result, Plaintiff suffered loss of custody, companionship, emotional distress, and other damages.

**FOURTH CLAIM FOR RELIEF**

*Fourteenth Amendment – Failure to Protect Child in State-Directed Care / Deliberate Indifference*

(42 U.S.C. § 1983; Against All Defendants)

61. Plaintiff incorporates all prior paragraphs.

62. Defendants were deliberately indifferent to known and substantial dangers to P.P. while in state custody.

63. As a direct and proximate result, Plaintiff suffered emotional distress, intensified family-separation harms, and other damages.

**FIFTH CLAIM FOR RELIEF**

*Fourteenth Amendment – Interference With Familial Association Through Visitation Burdening and Contact Termination*

(42 U.S.C. § 1983; Against Defendants Lopez, Estrella, Lohre, Bouknight,

and DOES 1–25)

64. Plaintiff incorporates all prior paragraphs.

65. Defendants unreasonably burdened and ultimately terminated visitation and familial contact without constitutionally adequate justification.

66. As a direct and proximate result, Plaintiff suffered severe emotional distress and other damages.

**SIXTH CLAIM FOR RELIEF**

*Violation of Rights Secured by the Indian Child Welfare Act (ICWA)*

(42 U.S.C. § 1983; Against Defendants Hill, Estrella, Lopez, Bouknight,

and DOES 1–25)

67. Plaintiff incorporates all prior paragraphs.

68. Defendants failed to comply with ICWA inquiry and notice requirements, depriving Plaintiff and her child of federal Indian-child protections.

69. As a result, Plaintiff suffered additional prejudice in the dependency process.

**SEVENTH CLAIM FOR RELIEF**

*Fourteenth Amendment – Interference With Relative Placement and Family Integrity*

(42 U.S.C. § 1983; Against Defendant Estrella and DOES 1–25)

70. Plaintiff incorporates all prior paragraphs.

71. Defendants obstructed kinship placement, impairing Plaintiff's family integrity interests and P.P.'s opportunity for family placement.

72. As a direct and proximate result, Plaintiff suffered additional separation-related harm.

**VII. INJURIES AND DAMAGES**

73. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer damages, including but not limited to the loss of care, custody, companionship, society, and familial association of her child, severe emotional distress, mental anguish, loss of reunification opportunity, litigation-related burdens, and other consequential losses.

74. The conduct of the individual Defendants was malicious, oppressive, reckless, and/or in callous disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages.

**VIII. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For compensatory damages in an amount according to proof;
B. For punitive damages against the individual Defendants in an amount according to proof and as permitted by law;
C. For declaratory relief that Defendants' conduct, as alleged herein, violated Plaintiff's rights under the Constitution and laws of the United States;
D. For costs of suit and, if later applicable through counsel, reasonable attorney's fees under 42 U.S.C. § 1988;
E. For pre-judgment and post-judgment interest as allowed by law; and
F. For such other and further relief as the Court deems just and proper.

**IX. JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Dated: 04-09-2026

PERRIELIN SESSIONS
Plaintiff, In Propria Persona
Signature: [signature]
Address: 113 Calle Jalisco, Vacaville, CA 95687
Email: perriewinkle37@gmail.com

## 28 U.S.C. 1257

- Plaintiff is claiming that she was entitled as a matter of due process and equal protection to an absolute veto over the adoption of her minor child P.P.
- Plaintiff was never found to be unfit
- Plaintiff contends that she was entitled to preservation of her parental rights to her minor child, absent a showing of "unfitness."

Wisconsin v Yoder, 406 U.S. 205, 231 – 233 (1972);Stanley v Illinois, supra; Mayer v Nebraska, 262 U.S. 390, 399 – 401 (1923), **"It is cardinal with us that the custody, care, and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."** Prince v Massachusetts, 321 U.S. 158, 166 (1944). **And it is now firmly established that "freedom of personal choice in matters of... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."** Cleveland Board of Education v LaFleur, 414 U.S. 632, 639 – 640 (1974)

**The U.S. Supreme Court has consistently protected parental rights, including it among those rights deemed fundamental. As a fundamental right, parental liberty is to be protected by the highest standard of review: the compelling interest test**

**( For 75 years parental rights have reached the highest level of protection.)**

- State employee who withholds a child from her family may infringe on the family's liberty of familial association. Social workers could not deliberately remove children from their parents and place them with foster caregivers when the officials reasonably should have known such an action would cause harm to the child's mental or physical health. *K.H. through Murphy v. Morgan (7th Cir. 1990)*

- The forced separation of parent from child, even for a short time (in this case 18 hours); represent a serious infringement upon the rights of both. *J.B. v. Washington County (10th Cir. 1997)*

- **Dr. Pelcovitz stated that "taking a child whose greatest fear is separation from his or her mother and in the name of 'protecting' that child [by] forcing them, what is in effect, their worst nightmare.... is tantamount to pouring salt on an open wound."**

- Another serious implication of removal is that it introduces children to the foster care system, which can be much more dangerous and debilitating than the home situation. Dr. Stark testified that foster homes are rarely screened for the presence of violence, and that

the incidence of abuse and child fatality in foster homes is double that in the general population. Tr 1596; Ex. 122 at 3-4. Children in foster care often fail to receive adequate medical care. Ex. 122 at 6. Foster care placements can disrupt the child's contact with community, school, and siblings.

## Factual Allegations:

August 17, 2022, Solano County Child Welfare Services Social Worker Kanisha Hill removed Plaintiff's minor child from her custody **without a warrant, without judicial authorization, and without the presence of any exigent circumstances.** The removal was based solely on a **presumptive, unconfirmed toxicology urine screen, which** was never verified. The hospital subsequently discarded the specimen, making confirmation impossible.

At the time of removal, the minor child **exhibited no symptoms of substance exposure,** no abnormal vital signs, and no clinical indicators suggesting ingestion of any narcotic or controlled substance. Medical staff notes contained **no observations consistent with drug exposure.** Thus, there was **no substantial evidence** supporting emergency removal.

Despite this, Ms. Hill created and submitted a narrative falsely characterizing Plaintiff as a "known drug user," and relied on this unverified allegation to file dependency petitions under **Welfare & Institutions Code 300(b)(1)** ("Failure to Protect"). These representations were materially false and constituted **fraud upon the court,** as they were unsupported by any confirmed toxicology results or objective medical findings. Ms. Hill's actions resulted in the **unconstitutional seizure** of Plaintiff's child in violation of the **Fourth Amendment,** and deprived Plaintiff of her **Fourteenth Amendment substantive and procedural due process rights,** including her fundamental liberty interest in the care, custody, and companionship of her child. The warrantless removal, absent exigency or judicial oversight, violated clearly established law.

The agency's assertion that the minor ingested methamphetamine was purely speculative and unsupported by any substantial evidence. No medical professional documented symptoms of methamphetamine exposure, no abnormal vital signs were recorded, and no clinical indicators suggested ingestion of any controlled substance. The presumptive toxicology screen was never confirmed, and the hospital discarded the specimen, making verification impossible. Despite the absence of medical or factual support, the agency further alleged that Plaintiff had a "long history of substance abuse," yet produced no

substantial evidence to establish such history or to demonstrate that Plaintiff was unable to provide regular care for her child.

Under *In re N.R.* (2023) 15 Cal.5th 520, the juvenile court may not rely on assumptions or the discredited **"tender years" presumption** to infer risk. Welfare & Institutions Code §300(b)(1) requires the agency to prove **each of the three statutory elements**:

(1) actual **substance abuse** by the parent;

(2) that such substance abuse rendered the parent **unable to provide regular care**; and

(3) that this inability **caused or created a substantial risk** of serious physical harm or illness to the child.

Here, the Department failed to establish **any** of these elements. The agency's reliance on unverified toxicology results and unsubstantiated claims of a "long history" of substance abuse does not satisfy the statutory burden. Speculation cannot substitute for evidence, and the record contains **no factual basis** supporting jurisdiction under §300(b)(1).

- Plaintiff was arguably deprived of her right to procedural due process because the intentional use of fraudulent evidence, into the procedures used by the state, denied her the fight to fundamentally fair procedures before having here child removed, a right included in Procedural Due Process. *Morris v. Dearborne (5th Cir. 1999)*

  **° This applied when Kanisha Hill removed P.P. from Plaintiff without having sufficient evidence to do so.**

- Absent extraordinary circumstances, a parent has a liberty interest in familial association and privacy that cannot be violated without adequate pre-deprivation procedures. An ex parte hearing based on misrepresentation and omission does not constitute notice and an opportunity to be heard. Procurement of an order to seize a child through distortion, misrepresentation and/or omission is a violation of the Forth Amendment. Parents may assert their children's Fourth Amendment claim on behalf of their children as well as asserting their own Fourteenth Amendment claim. *Malik v.Arapahoe Cty. Dept. of Social Services, (10th Cir. 1999)*

- When the State places a child in a foster home it has an obligation to provide adequate medical care, protection, and supervision. *Norfleet v. Arkansas Dept. of Human Services, (8th Cir. 1993)*

-

**Immunity**

- Social workers (and other government employees) may be sued for deprivation of civil rights under 42 U.S.C. § 1983 if they are named in their 'official and individual capacity'. *Hafer v. Melo, (S.Ct. 1991)*

- Defendant was not entitled to qualified immunity or summary judgment because he should've investigated further prior to ordering seizure of children based on information he had overheard. *Hurlman v. Rice, (2nd Cir. 1991)*

Perrielin Sessions
113 Calle Velasco
Vacaville, Solano
California 95687
(707) 372-3064

Case No. 2:25-cv-02936

# 1. VIOLATIONS TIMELINE

# (CHRONOLOGICAL CONSTITUTIONAL & STATUTORY ERRORS)

A consolidated, litigation-ready timeline showing procedural due process violations, evidentiary errors, statutory misapplications, and structural defects.

## 2022- REMOVAL & EARLY PROCEEDINGS

- **Failure to provide meaningful opportunity to be heard**
  - Early hearings restricted Plaintiff's ability to present evidence, challenge allegations, or correct the record
  - Agency repeatedly relied on unverified statements and hearsay without providing the Plaintiff the ability to confront or cross-examine.

- **Inadequate reasonable services**
  - Services were delayed, inconsistent, or not tailored to the Plaintiff's circumstances
  - Domestic violence services were recommended but not meaningfully facilitated; the Agency later used this gap against you.

## 2023- FR TERMINATION & TRANSFER TO PERMANENCY

- **November 2023 – FR/FM services terminated prematurely**
  - Social worker Lopes testified she inherited a case where:
  - Plaintiff was not testing for the department
  - Plaintiff did not stay in Ujima
  - -Plaintiff "minimizing domestic violence"

- **But the record shows**
  - Plaintiff was testing through other programs

  - Plaintiff was seeking DV support
  - Plaintiff was not given consistent referrals or transportation

- **Failure to provide accurate case information**
  - Lopes admitted she relied on prior worker summaries rather than firsthand knowledge
  - She acknowledged she did not know whether Plaintiff was in therapy or why prior therapist ended services

- **Mischaracterization of visitation**
  - Agency claimed concerns about joint visits with father, but no evidence showed Plaintiff posed any risk
  - The Agency used father's behavior to restrict Plaintiff's access

## 2024- CONTESTED JV-180 / 366.26 HEARINGS

**October 10-23-2024 – Evidentiary Violations**

- **Improper exclusion of exculpatory drug-testing evidence**
  - County Counsel repeatedly objected to Plaintiff's hair-strand results, despite the Court later ruling the evidence was relevant rebuttal
  - The Court noted no one had asked whether Plaintiff's hair was chemically treated during the first test, undermining the Agency's argument

- **Agency's own witness (C-DAT collector) confirmed:**
  - Plaintiff's hair had ½ inch of natural brown growth at the root,
  - She collected 1.5 inches from the root
  - Chemically treated hair can still be tested
  - Plaintiff presented valid ID
  - Plaintiff complied fully with the process

- **Agency attempted to block Plaintiff's ability to rebut their own expert**
  - County Counsel objected to Plaintiff's 7-panel test and the lab expert, despite the Court finding the evidence admissible and relevant

## OCTOBER 21-23, 2024 – BENEFICIAL RELATIONSHIP EVIDENCE IGNORED

- **Court acknowledged it could consider prior testimony, Including:**
  - Social worker Lopes's case notes on Plaintiff's visits,
  - Testimony from Ms. H about Plaintiff's positive visits at Opportunity House

- **Yet the Agency still argued "no beneficial relationship," Contradicting:**
  - Their own visitation logs
  - The bonding study
  - Testimony from multiple witnesses
  - The Court's own observations

## OCTOBER 28, 2024 – STRUCTUAL DUE PROCESS ISSUES

- County Counsel apologized on the record for implying Plaintiff's attorney acted improperly – confirming the adversarial posture had crossed professional boundaries

- Court acknowledged confusion about stipulations and evidence scope, showing procedural irregularity in how evidence was handled

April 10 2026

[signature]

PERRIELIN SESSIONS
(707) 372-3064
Perriewinkle37@gmail.com

Perrielin Sessions
113 Calle Jalisco
Vacaville, Solano
California 95687
(707) 372-3064
Case No.
2:25-CV-02936



# REVERSIBLE ERROR INDEX

## I. STRUCTURAL DUE PROCESS ERRORS (AUTOMATIC REVERSAL)

Structural errors are those that **infect the entire proceeding** and require reversal without harmless error analysis.

### 1. Court Did Not Know What Evidence It Was Allowed to Consider

**Legal Rule**: A judge must know what evidence is admitted and must apply the correct evidentiary record. (Due Process; In re Marriage of Carlsson)

**Record Evidence**:

- Judge Rios: "I have a question... is the Court able to consider portions of Ms. Lopes's testimony... and the testimony of Ms. H?"

- "I don't know if we talked about that. I don't know."
  **Why Reversible**:

  The judge openly admitted uncertainty about the evidentiary record **during a termination of parental rights hearing**, which is a **structural due process violation** because the Court cannot weigh evidence it is unsure it can consider,

### 2. COURT RECONSTRUCTED THE EVIDENCE AFTER THE FACT

**Legal Rule**: A court cannot "rebuild" the evidentiary record after ruling.

**Record Evidence**:

- Judge: "Tell me what you want to add... bonding study... father's letter... previous testimony..."
- Court added evidence **after** announcing termination
  **Why Reversible**:

This violates due process because the Court's ruling was not based on a fixed, known evidentiary record.

### 3. MOTHER'S COUNSEL WAS ILL AND UNABLE TO EFFECTIVELY PARTICIPATE

**Legal Rule**: Parents have a constitutional right to effective assistance of counsel in dependency proceedings.

**Record Evidence**:

- Oct. 15: Ms. Stoll had COVID, was dizzy, could not appear
- Judge: "I don't know that I am comfortable with having an attorney who's sick participate."
  **Why Reversible**:

The Court acknowledged the impairment but continued scheduling and evidentiary decision anyway. This is a **structural fairness violation.**

## II. EVIDENTIARY ERRORS

### 4. Agency Attempted to Block Exculpatory Hair-Strand Evidence

**Legal Rule**: A parent has the right to present evidence rebutting allegations

**Record Evidence**:

- County Counsel repeatedly objected to the 7-panel test
- Judge: "I respectfully disagree... this new test actually is relevant."
  **Why Reversible**:

The Agency's obstruction forced the Court to litigate admissibility mid-trial and delayed Plaintiff's ability to present rebuttal evidence

### 5. Agency Attempted to Block Plaintiff's Expert Witness

**Legal Rule**: Excluding defense experts violates due process when the expert is necessary to rebut government claims

**Record Evidence**:

- County Counsel objected to expert Abbas testifying
- Judge overruled and ordered him to appear
  **Why Reversible**:

The Agency's obstruction delayed the hearing and impaired Plaintiff's ability to present scientific evidence

### 6. Court Allowed Agency to Reply on Unverified, Secondhand information

**Legal Rule:** Dependency findings must be based on competent evidence

**Record Evidence:**

- Lopes admitted she relied on prior worker summaries
- She did not verify therapy status, DV progress, or testing
  **Why Reversible:**

The Court relied on **hearsay summaries** instead of verified facts

## III. PROCEDURAL ERRORS

### 7. Court Allowed Agency to Use Father's Conduct Against Mother Without Individual Findings

**Legal Rule:** Findings must be individualized; guilt by association violates due process.

**Record Evidence:**

- Lopes: "Mom requested a joint visit... it was an issue because of domestic violence.. And concerns about dad's behavior."
  **Why Reversible:**

Mother's visitation and reunification were restricted based on **father's behavior**, not hers.

### 8. Court Failed to Ensure Make-Up Visits or Reasonable Visitation

**Legal Rule:** Reasonable visitation is required before termination

**Record Evidence:**

- Mother requested father's missed visits; Agency denied

- Court acknowledged mother's consistent visitation.
  **Why Reversible:**

The Agency failed to provide reasonable visitation, which is a **mandatory prerequisite** to termination

### 9. Court Misapplied the Beneficial Relationship Exception (Caden C)

**Legal Rule:** In re Caden C requires:

1. Regular visitation
2. Substantial, positive emotional attachment
3. Detriment from severance

   **Record Evidence:**

- Court found:
  -"He runs to her, hugs her, looks for her..."
  "Visits were positive... loving relationship.. Beneficial."
- Court still denied the exception based on "stability of adoption," which Caden C. forbids

  **Why Reversible:**

The Court improperly weighed **general adoptability** against the parent-child bond, which is **legal error**

## IV. SUBSTANTIVE ERRORS

### 10. Court Relied on Bonding Study That Was Incomplete and Methodologically Defective

**Legal Rule:** Bonding studies must be reliable and consider full context.

**Record Evidence:**

- Dr. Johnson observed only a short visit.
- She did not review full visitation history.
- Court acknowledged mother's strong bond but deferred to the study anyway.
  **Why Reversible:** The Court relied on a flawed expert report over direct evidence of attachment.

### 11. Agency Misrepresented Mother's Progress and the Court Adopted Those Misrepresentations

**Legal Rule:** Findings must be supported by substantial evidence. **Record Evidence:**

- Mother testified to: – Four weekly groups – NA sponsor – Clean tests – Stable housing

- Agency claimed she was "not testing," "not in therapy," "minimizing DV."
  **Why Reversible:** The Court adopted inaccurate Agency claims contradicted by the record.

# V. ICWA ERROR

## 12. Court Made ICWA Finding Without Proper Inquiry

**Rule:** ICWA requires active inquiry and documentation.

**Record Evidence:**

- ICWA report filed 9/3**Legal** 0.
- Court made finding on 11/7 without discussion of inquiry steps.
  **Why Reversible:**
  Failure to conduct proper ICWA inquiry is **automatic reversal**.

# VI. CUMULATIVE ERROR

## 13. Combined Errors Rendered the Hearing Fundamentally Unfair

**Legal Rule:** Even if individual errors are harmless, cumulative error requires reversal.

**Record Evidence:**

- Confusion about evidence
- Obstruction of exculpatory evidence
- Misapplication of Caden C.
- Counsel illness
- Incomplete bonding study
- Misrepresentations by Agency
  **Why Reversible:**
  The totality of errors deprived mother of a fair hearing.

APRIL 10, 2026 (5)

[signature]

Perrielin Sessions
Perrewinkle37@gmail.com

DATE [redacted]

# Court notes

| | | | |
|---|---|---|---|
| [redacted] | 2:25-CV-02936 | JUDGE | |
| [redacted] | PERRIELIN SESSIONS | LAWYER | Pro per |

[redacted]

*~~Ref~~ ∘ Reversible ERROR Index - Record TPR Termination of parental Rights: Oct 2024 - Nov 2024

∘ Violation Timeline - Reference's throughout the case

∘ Email dated April 9, 2026
- U.S. Department of Justice Civil Rights Division: Acknowledged of (issues)

[redacted]

∘ Email dated Feb 6, 2023 - WIC referencing continuances & Hearsay Evidence

∘ Email dated July 12, 2023 - Regarding my son (NEEDS)

∘ Email dated Sept 6, 2024 - Sept 9, 2024 Evidence showing I wasn't getting help

[redacted]

DATE

# Court notes

M T W T F S S

| TIME | | JUDGE | |
|---|---|---|---|
| APPEARANCE TYPE | | LAWYER | |

POINTS DISCUSSED

- Regarding my son - Bump on head, more reported bruising, Response to JV-180 12-06-2022
- Department acknowledging they were aware of the bruising, illness, & there

- Proof my dad Reported Indian heritage 10-13-22 Report
- Maternal Grandparents for placement

- Letter from Plaintiff's oldest child
- Letter from Neighbor

OUTCOME(S)

- Letter from Doctor x2

- Evidence showing Agency stated Mom was making Adequate progress

DATE

# Court notes

[redacted]

| | | | |
|---|---|---|---|
| [redacted] | 2:25-CV-02936 | JUDGE | |
| [redacted] | Perridin Sessions | LAWYER | Pro per |

[redacted]

- One picture showing 1 of the severe diaper Rashes. While in State Custody

- Form showing drug testing requirements never indicated held to test at Probation

- August 22, 2022 - Parental Notification of Indian status

- Defendant Brian Bauknight contacts the hospital & they affirm there was no

[redacted] confirmed Urine toxicolgy test -

Report: Response To JV-180 12-20-22

- Home inspection conducted by Cecilia Lopez.

Evidence showing the home was safe

[redacted]

Gmail

Perrielin Sessions <perriewinkle37@gmail.com>

## (no subject)

2 messages

**Perrielin Sessions** <perriewinkle37@gmail.com> Mon, Feb 6, 2023 at 9:08 AM

[redacted]

**(b) Notwithstanding any other provision of law if a minor has been removed from the parents, or guardians custody, no continuance shall be granted that would result in the disposition hearing held pursuant to section 361 being completed longer than 60 days after hearing at which a minor was ordered removed or detaineds unless the court finds that there was exceptional circumstances requiring such circumstance. The facts supporting such continuance shall be entered upon the minutes of the court. In no event shall the court grant continuance that would cause the hearing pursuant to section 361 to be completed more than six months after the hearing pursuant to section 319.**

**Thats exactly what happened so how can they find justification on keeping my baby??????**

**Submitted for court**
**(Consideration, the court may not consider any such report or document unless the preparer is made available for cross-examination)**

**"Hearsay is defined as a statement that was made by someone other than the witness who is testifying and that is offered to prove the truth of the matter asserted.**
**In simple terms hearsay is when the witness recounts what somebody else said"**

**"Social worker did not solict and integrate into the case plan the input of the child, or child's family"**

**"Child's rights to Family intergrity is concomitant to that of a parent" 1983 ACTION**

*** Ram v Rubin 118 F 3d 1306 (9th Cir 1997)**
**Holding a Parent has a Constitutionally protected right the the care and custody of his or her child/children and cannot be summarily deprived of custody without notice and a hearing except when the child/children are in imminent danger"**

**Perrielin Sessions** <perriewinkle37@gmail.com> Wed, Jan 24, 2024 at 12:58 PM
To: winkle0perrie40@outlook.com

[Quoted text hidden]

Gmail

Perrielin Sessions <perriewinkle37@gmail.com>

**Re testing**

4 messages

Contacted my Attorney ↗ she wouldn't help

[redacted] Fri, Sep 6, 2024 at 10:10 AM

Cc: Perrielin Sessions <perriewinkle37@gmail.com>

Hi all,

In speaking with Perrielin, she may have trouble getting to Probation testing today because of obligations at Opportunity House.

We discussed and agreed that, before abandoning todays Probation testing, she would speak with Donna about options regarding her obligations, etc. **Another issue was transportation** from one site (for a different test) to probation, so we also agreed she would find out how proximate the two sites, in hopes she can walk some of the way and then Uber back to O-House.

I am encouraging Perrielin to do all probation testing, whenever possible because the Agency is beating me over the head with any misses on that score. My concern is, I don't know what the Judge will decide is the weightier test.
I know Perrielin is testing with all of you and Ujima, but, I am paid to worry. So I am worrying.
I just want us all on the same page.

[redacted]

---

[redacted] Mon, Sep 9, 2024 at 12:05 PM
To: [redacted]
Cc: "[redacted], Perrielin Sessions <perriewinkle37@gmail.com>

Thank you so much for your care and concern. **Unfortunately, transportation has always been a barrier for our residents that are on involved with Social Service, Drug Court, testing in Fairfield, Vallejo,** and probation who live at Opportunity House. I understand the worry so I do understand the concern about Perrielin finding solutions for whatever comes her way. We will continue to do our part in supporting her any way we can.
[Quoted text hidden]
--
[redacted]
Case Manager
Opportunity House
*It Starts With an Address*
[redacted]

✓ case manager don't help + I did drug test with her (wasn't Probation)

---

[redacted] Mon, Sep 9, 2024 at 12:09 PM

Cc: Perrielin Sessions <perriewinkle37@gmail.com>

I sent her a lyft for today.

[redacted]

Dependency Drug Court Senior Case Manager

Superior Court of California, County of Solano

600 Union Avenue

Fairfield, CA 94533

Cell: (707) 639-0459

Office: (707) 207-7411

Fax: (707) 426-4453 New

E-mail: [redacted]

www.solano.courts.ca.gov

*"Dedicated to providing access to fair and impartial justice for all"*

*CONFIDENTIALITY NOTICE: This message contains confidential information. Unless you are the addressee (or authorized to receive for the addressee), you may not copy, use, or distribute this information. If you have received this message in error, please advise Courtney Tindall immediately at (707) 207-7411 or return it promptly by mail. Thank you.*

---

**From:** [redacted]
**Sent:** Monday, September 09, 2024 12:05 PM
**To:** [redacted]
**Cc:** [redacted].courts.ca.gov>; Perrielin Sessions <perriewinkle37@gmail.com>
**Subject:** Re: Re testing

**[WARNING]** This email originated from outside of the organization. You should only click links or open attachments from a trustworthy source.

[Quoted text hidden]

---

[redacted] Mon, Sep 9, 2024 at 4:45 PM
To: [redacted]
Cc: Perrielin Sessions <perriewinkle37@gmail.com>

Amy- I want to clarify with you that **until Perrielin is my client, I am not obligated to provide any services to Perrielin**. So when she contacts you for assistance **she can't just contact me.** The money that I am spending to assist her is money that helps my current clients and once that money is gone, it's gone. **I will assist her with testing and I just want you to know that when she is reaching out to you it is because she has asked everybody else.** So it would be great if **the department would accept the observed urine tests from Ujima because they are urine.** This is ridiculous to be double dipping into resources that don't get replenished.

Thank you,

[redacted]

Dependency Drug Court Senior Case Manager

Gmail **Perrielin Sessions <perriewinkle37@gmail.com>**

---

# Today's visit

3 messages

---

**Perrielin Sessions** <perriewinkle37@gmail.com> Wed, Jul 12, 2023 at 12:23 PM
To: "Lohre, Katrina" [redacted]>, A Stoll [redacted], RLivingston [redacted]

Hi everyone,
So today Jaxson showed up with slip on shoes that were uncomfortable for him to walk in and they were hurting his feet.
Also there was no wipes in backpack.

---

**Lohre, Katrina** [redacted] Wed, Jul 12, 2023 at 12:25 PM
To: Perrielin Sessions <perriewinkle37@gmail.com>, A Sto[redacted], "Livingston, Richard" [redacted], "Oldwin, Ana C." [redacted] "Alexander-Yarbor, Kimberly A." [redacted]

Thank you mom. I will reach out to the caregiver and let her know.

[Quoted text hidden]

| |
|---|
| [EXTERNAL Email Notice!] External communication is important to us. Be cautious of phishing attempts. Do not click or open suspicious links or attachments. |

NOTICE OF CONFIDENTIALITY: This e-mail message, including any attachments, is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential or exempt from disclosure under applicable laws. If you are not the intended recipient, you are notified that dissemination, distribution, or copying of this communication is strictly prohibited and may be a violation of law. If you have received this communication in error, please notify the sender by reply e-mail and delete all copies of the original message.

---

**Perrielin Sessions** <perriewinkle37@gmail.com> Wed, Jul 12, 2023 at 12:31 PM
To: "Lohre, Katrina" [redacted]

Thank you, [redacted] needs tennis shoes.. I will be getting my appointment for my outpatient later today and I'll give you guys the information.. Also I also got a full time job..

[Quoted text hidden]

Gmail

Perrielin Sessions <perriewinkle37@gmail.com>

# Response: Your Civil Rights Division Report - 752952-WLM from the Disability Rights Section

1 message

**DOJ Civil Rights - Do Not Reply** <civilrightsdonotreply@mail.civilrights.usdoj.gov> Thu, Apr 9, 2026 at 12:23 PM
Reply-To: civilrightsdonotreply@mail.civilrights.usdoj.gov
To: perriewinkle37@gmail.com

U.S. Department of Justice
Civil Rights Division

civilrights.justice.gov

Re: Civil Rights Division Complaint – 752952-WLM from the Disability Rights Section

Thank you for contacting the Department of Justice on April 8, 2026. We have reviewed the information you provided and have determined that the complaint raises issues that are more appropriately addressed by another federal agency. We are, therefore, referring this complaint to the following agency for further action:

Department of Health and Human Services
1-800-368-1019

What you can do:

The above agency will review your complaint. While we will take no further action on this matter, you can contact the agency above to check the status of your complaint.

How you have helped:

Although we are unable to act on your complaint, your report can help us find issues affecting multiple people or communities. It also helps us understand emerging trends and topics.

Thank you for taking the time to contact the Department of Justice about your concerns.

Sincerely,

Case No. 2:25-CV-02936


2022
Foster Care Solano

| Child: Paul J. Primeaux | | Court Number: J45631 |
|---|---|---|

9) **ALCOHOL AND OTHER SUBSTANCE ABUSE TESTING**

a) ☒ Curtis Primeaux shall submit to **Alcohol and Other Substance Abuse Testing** (as arranged by the social worker).

☒ Urine ☒ Hair Strand ☐ Other:

Frequency: randomly

b) ☒ Perrielin Sessions shall submit to **Alcohol and Other Substance Abuse Testing** (as arranged by the social worker).

☒ Urine ☒ Hair Strand ☐ Other: DOES NOT SAY Probation

Frequency: randomly

10) **PSYCHIATRIC / PSYCHOLOGICAL EVALUATION (POST JURIS)**

shall undergo a **Psychiatric/Psychological Evaluation** (as arranged by the social worker).

Undergo a psychological/psychiatric evaluation by an examiner to be selected by the Solano County Child Welfare Services. The Department is authorized to release relevant information to the selected evaluator.

11) **PARENTAL AUTHORITY TO AUTHORIZE PSYCHOTROPIC MEDICATION (Out of Home Placement Only)**

☐ The mother ☐ father ☐ guardian pose(s) no danger to the child and has/have the capacity to authorize psychotropic medication and hereby is/are/remains delegated the authority to consent to such medication on behalf of the child after consultation with the social worker.

12) **ADMINISTRATION OF PSYCHOTROPIC MEDICATION**

☐ This minor is receiving extensive mental health services and disruption in the minor's placement would be detrimental to the minor. If the minor is at imminent risk of hospitalization or loss of placement and a psychiatrist recommends immediate administration of psychotropic medication to address the behaviors which place the minor at imminent risk of hospitalization or loss of placement, Child Welfare Services or its designee is authorized to immediately begin the prescribed medication regimen. Child Welfare Services shall bring an application for authorization to administer medication before the Juvenile Court within two court days of beginning the medication regimen.

13) **CONFIDENTIAL ADDRESSES**

a) ☒ It is not in the best interest of the child that his/her address be released to the parent/guardian. The address of the child shall not be released.

b) ☐ The address of the ☐ mother ☐ father ☐ guardian is/are to remain confidential.

14) **GENERAL ORDERS**

The parents/guardians:

**a)** Shall cooperate with the supervising social worker and keep the social worker informed of all changes of address and telephone number within 48 hours of said changes.

**b)** Shall sign all necessary releases of information to facilitate the exchange of information between the Department and the treating therapists and/or service providers.

**c)** Shall obey any criminal court orders and follow any conditions of probation or parole.

**d)** Shall cooperate with the District Attorney's Office and/or with the Department of Revenue in determining their ability to reimburse the County for expenses incurred for the cost of supervising their child in out-of-home care.

15) ☐ **OTHER FINDINGS AND ORDERS**

ICWA-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|
| NAME: FIRM NAME: STREET ADDRESS: CITY: STATE: ZIP CODE: TELEPHONE NO.: FAX NO.: EMAIL ADDRESS: ATTORNEY FOR (name): Kenneth J. Lee, JD 1234 Empire St, #2306 Fairfield, CA 94533 707-772-6755 kilcolaw@gmail.com | FILED Clerk of the Superior Court AUG 22 2022 By DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO STREET ADDRESS: MAILING ADDRESS: 600 Union Avenue CITY AND ZIP CODE: Fairfield, CA 94533 BRANCH NAME: Juvenile Division | |
| CHILD'S NAME: Primeau X | |
| PARENTAL NOTIFICATION OF INDIAN STATUS | CASE NUMBER: J45631 |

**To the parent, Indian custodian, or guardian of the above named child: You must provide all the requested information about the child's Indian status by completing this form. If you get new information that would change your answers, you must let your attorney, all the attorneys on the case, and the social worker or probation officer, or the court investigator know immediately and an updated form must be filed with the court.**

1. Name: PERRIELIN SESSIONS
2. Relationship to child: [X] Parent [ ] Indian custodian [ ] Guardian [ ] Other:

**Indian Status**

3. a. [ ] I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe.
   Name of tribe(s) *(name each)*:
   Location of tribe(s):

   b. [ ] The child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe.
   Name of tribe(s) *(name each)*:
   Location of tribe(s):

   c. [X] One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe.
   Name of tribe(s) *(name each)*: Sioux Rosebud South Dakota
   Location of tribe(s): Paternal S.D.
   Name and relationship of ancestor(s): WRONG ✓ maternal

   d. [ ] I am a resident of or am domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land.

   e. [ ] The child is a resident of or is domiciled on a reservation, rancheria, Alaska Native village, or other tribal trust land.

   f. [ ] The child is or has been a ward of a tribal court.

   g. [ ] Either parent or the child possesses an Indian identification card indicating membership or citizenship in an Indian tribe.
   Name of tribe(s) *(name each)*:
   Membership or citizenship number *(if any)*:

   h. [ ] None of the above apply.

4. A previous form ICWA-020 [ ] has [ ] has not been filed with the court.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/22/2022

PERRIELIN SESSIONS
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE)

**Note: This form is not intended to constitute a complete inquiry into Indian heritage. Further inquiry may be required by the Indian Child Welfare Act.**

On November 29, 2022, Social Services Supervisor, Brian Bouknight, contacted North Bay Vaca Valley Hospital and was informed that the hospital did not complete a confirmatory test on or about August 17, 2022 and they did not keep the specimen to be able to perform a confirmatory test.

**Home Inspection**

On November 29, 2022, the undersigned contacted the parents and a home visit inspection was completed at the parents' home within one (1) hour of the undersigned's request to see the home. The undersigned was welcomed into the home by the parents and escorted throughout the property. The undersigned noted the home was clean and free of any visible health hazard or property damage. The undersigned noted no evidence of old food, dirt on the walls or floor, cigarette butts, drugs or drug paraphernalia, or medication anywhere in plain view. The undersigned noted there was white texture compound on the walls that appeared to have been placed there to complete wall texture repairs. The father, Curtis Primeaux, said he was completing the home renovations and stated the condition of the home on August 17, 2022 was isolated as he was very early on in the repairs at that time.

The undersigned noted there was some light switch cover plates and a door knob missing downstairs and the doors to the parents' and minor's bedroom were missing, but those items did not appear to pose any safety hazards. The undersigned also inspected the parents' bedroom and a room that the parents stated had been previously used as a storage room that had since been transformed into [redacted]bedroom. Both bedrooms appeared well furnished, clean, and free of any visible health hazards. The undersigned determined that all utilities were functional. The undersigned went into the backyard and noted it was clean and free of any safety hazards.

////

had a "goose egg" which she described as swelling in the area that he bumped his head. The resource parent stated [redacted] was not exhibiting any obvious signs of pain, behavioral changes, or changes in his physical activity and no over-the-counter medication was given to him. A medical examination was completed at Kaiser on November 01, 2022 and it was determined that [redacted] did not have a fever or any other signs of illness or fracture. There was no bruising to any parts of his body except for the left side of his forehead above his left eye. The chief complaint was "head injury." The doctors noted "a small bruise over ~~her~~ his left eye without underlying hematoma, swelling, or tenderness to palpitation." [redacted] was described as "awake, alert and oriented. No acute distress. Well developed, hydrated and nourished. Appears stated age." The diagnosis was a "close head injury." The doctors determined that no follow up was needed and no x-rays or CT scans were ordered.

On November 13, 2022, the former resource parent reported [redacted] had a bruise on his elbow and she was unsure when or how he sustained it as he had long sleeve pajamas on during the weekend. There was no evidence of wrongdoing, but the discussion to move Jaxson was conducted after that reported incident.

***Amphetamine/Methamphetamine Toxicology Results***

The parents have asserted that [redacted] presumptive positive toxicology exam conducted by North Bay Vaca Valley Hospital on August 17, 2022 was a result of an accidental medication ingestion. The parents have identified Carvedilol as the likely medication the parents believe [redacted] ingested that caused the positive toxicology results. On November 29, 2022, the undersigned completed a home visit at the parents' home in Vacaville, CA and verified the grandfather, [redacted], had an active prescription for Carvedilol.

////

////

was pending. Due to those reported concerns, [redacted] was referred to A Better Way for services on November 02, 2022. A Better Way director, [redacted] stated that due to [redacted] young age, services would likely consist of play therapy, art therapy, and relationship-based interventions meant to work through the trauma that may occur when a child has been removed from their parents' care and preparing the child with reunification. It was reported the parents could be included in those services if they were interested and willing to participate. [redacted]

***Bruising Concerns***

The Department has been aware of bruising and marks that have been found on Jaxson's shins, legs, finger, back, and buttocks since September 30, 2022. On October 04, 2022 and October 05, 2022, Solano County received reports regarding the aforementioned allegations and after investigations were completed, it was determined the physical abuse and general neglect allegations against the former resource parents were unfounded as there was no evidence of intentional harm based on interviews with the daycare provider, the resource parents, and a medical doctor. Jaxson was also medically examined at Kaiser on October 05, 2022 and it was determined that the mark on his back was a rash and not a bruise and was given a topical cream. The bruising on his shins were determined to be normal for a mobile, young child his age, and the mark on his finger was determined to be a minor cut and not a burn.

[redacted]

moved to a Foster Family Agency foster home on November 28, 2022.[redacted]

***Medical Concerns***

**The Department has been aware of ongoing concerns about Jaxson having fevers, congestion, stuffiness, and other cold like/flu like symptoms since approximately September 22, 2022. The most recent documented occurrence was on or about October 19, 2022 when a Kaiser doctor diagnosed Jaxson with an upper respiratory infection.** It should be noted that prior to [redacted] being placed in foster care, he was not cared for outside of the family's home and had limited extended exposure to other children. It appears tha[redacted] increase in cold like symptoms increased while he attended a daycare center during his last placement[redacted] received appropriate medical care as needed for those symptoms. **Due to the aforementioned medical concerns, visitations had been canceled on numerous occasions, but rescheduled with additional time allotted for those missed visits.**

The parents and the former resource parents had reported to the Department the frequent [redacted] prior to, **during, and after visitations.** The parents have reported and medical documentation note that [redacted] has gastrointestinal issues, including being diagnosed with gastroesophageal reflux disease (GERD) on December 24, 2020 and with constipation on August 05, 2022 and September 26, 2022 that had been periodically treated prior to [redacted] being in care as well as during placement. It is believed the digestive issues may be causing the diaper rashes.

The former resource parent had expressed concern about [redacted] increased preoccupation with food and/or eating even after he had been fed. The parents denied [redacted] exhibited those behaviors while in their care. On November 01, 2022, during a medical exam with Kaiser, medical

- The young age of the Jaxson.

**Consideration Of Placement With Non-Custodial Parent**

This is not applicable as [redacted] was removed from the care of his mother [redacted] and the father [redacted] so neither parent was a non-custodial parent.

**Consideration Of Relative Placements**

On September 26, 2022, maternal grandfather, Perry Desersa and his wife JoAnn Desersa were referred to out of county (Placer County) Resource Family Approval (RFA) process for placement of Jaxson. During the initial background checks, there was some information that came up that did not allow Mr. and Mrs. Desersa to be considered for Emergency Resource Family Approval Placement. On October 5, 2022, Mr. and Mrs. Desersa have decided to withdraw from RFA process in Placer County as the mother will be moving into their home.

The Department will continue to make additional efforts to find relatives interested in placement.

**OUT OF HOME PLACEMENT**

**Placement History:**

| Child's Name | Date of Original Placement | Date of Current Placement | Total Number of Placements | Child Ever Return Home |
|---|---|---|---|---|
| [redacted] | 08/17/2022 | 08/25/2022 | 2 | No |

**Appropriateness of the Placement and Child's Adjustment to Placement**

[redacted]

Paul Jaxson Primeaux J45631

[redacted] [redacted] [redacted]

[redacted] [redacted] [redacted]

[redacted] [redacted] Child Welfare

**<u>INDIAN CHILD WELFARE ACT STATUS</u>**

☐ The Indian Child Welfare Act does or may apply.

☒ The Indian Child Welfare Act does not apply.

| Child's Name | Indian Child | Tribe (If Known) | ICWA Eligible |
|---|---|---|---|
| [redacted] | [redacted] | Sioux | Maybe |

[redacted]

**<u>Maternal Family</u>**

| Relative Known To Department | Date(s) of Inquiry | Inquiry Results |
|---|---|---|
| **Mother:** Perrielin Sessions | 08/17/2022 | On August 17, 2022, the mother, Perrielin Sessions informed the undersigned that she has Native American Ancestry but is not registered with any Tribe. On August 19, 2022, the mother, Perrielin Sessions reported that her father, Perry DeSersa is a part of the Sioux tribe in South Dakota. She reported her father may be registered but she was never registered. |

Regarding case #45631

Kellie Ann Sessions

05/14/2002

Wheatland, Ca

To whom it may concern,
12/29/2022

Perrielin Sessions my mother has been a good mother, not prefect because no one can be a perfect mother, although it would be really nice I wouldn't change my mom for anything to be real with you. Since I can remember her kids have always come first there was never a day I didn't have food in my stomach, not a time I didn't have a roof over my head.

The day Jaxson 11/25/2020 my baby brother was born I was nothing but proud of my mother and filled with joy. She has never put him in any danger he has never been left with someone he didn't know he never got left to cry he was nothing but loved. The day he got taken my mother had done nothing wrong she had left him with his father so she could go to the hospital due to being ill. It was a pure accident/ mistake you can't punish someone for something that they had no control over is what I believe. My mother has moved out of the house the incident happened in which in my opinion is enough because I was there through a lot of there battles I am not saying one person is better nor am I trying to turn hate to anyone but if you give my little brother back to one of them it needs to be my mother, because she is the one that was the one that took care of Jaxson, she took him to all of his Doctor appointments, stayed up endless nights when he was first born due to Jaxson having GERD.. My mom truly is a great mother, and her kids have always come first.. My mother has people she has family that will support her and help her through this journey and get her life together again me and my brother are crushed without our baby brother and I would not just say give Jaxson back to my mom if she wasn't fit for it, if you knew me you would know this is true. My mother has also been attending NA meetings daily, which I know my mom is not doing any drugs, but she will do what she has to do for her children.. She also had been doing Parenting courses online and working on herself. My mom graduated high school while taking care of me, I'm 20 years old now and my brother and I always knew and know that our Mother will always be there for us, and she has always encouraged us in anything we have done in our lives. I can remember when my mom would get home from work and still help my brother and I with our homework, cook us dinner and attend school functions or sports games, or stay up late and make cupcakes for our class even on late notice, then turn around and get up at 4am for work.

My mom Perrielin was a single mother with my brother who is 16 years old and myself, she never hit us nor put us in danger.. She would listen when we talked, listened to our feelings and told us that we can be anything we want to be.. She was always positive in raising us.. She had bad days but what mother doesn't. . She always worked and provided for us as she did for Jaxson, and continues to provide for all three of us now..

Thank you for taking the time to read this.

Sincerely,

Kellie sessions

To Whom it May Concern,

I am Hillary Hammer and I live at 867 Corte Malaga, Vacaville. Curtis has been a neighbor since we moved in back in 2016 and Lin has been our neighbor since she moved in four years ago. Curtis has worked hard to set up the front yard so Jackson can play with the neighborhood kids while Lin would have Jaxson out in the stroller or walker when he wasn't walking yet. From what I can see they are wonderful parents, Jaxson is always happy and smiling. He loves to play with the neighbors and our girls love playing with him since he was a baby. He always looks well taken care of. Lin, Curtis and I became friends shortly after they had Jaxson and we would talk when we were outside with our kids or on walks. She has always been a kind woman to me and a protective mom. Curtis and Lin are always hands on with Jaxson playing with him in the front yard whether it was swinging in the baby swing or digging in the dirt.

Thank you,

Hillary Hammer

Hillary Hammer

743 E. Tabor Ave.
Fairfield, CA 94533
(707) 247-2933
https://www.GrassrootsDPC.org

CITY FREE CLINIC

12/13/2022

**Re: Perrielin Sessions**

To Whom This May Concern:

Perrielin Sessions with DOB 11/18/1982 is a patient under my care.

I have witnessed Perrielin's interactions with her son, Jaxon, in my office. I can attest that during my observations, she has consistently had his best interests in mind and she displays loving affection and care for Jaxon.

I first met Perrielin during her pregnancy with her son Paul "Jaxon." I followed her pregnancy for nine months with routine frequent visits for prenatal care. During that time, I saw Perrielin's dedication to parenting. She asked insightful questions and listened to my advice. Unfortunately, I was not able to attend the delivery which was traumatic for Perrielin, however she was able to advocate for herself and her baby. Perrielin attended every postpartum appointment and was attentive to Jaxon. Additionally, I came to know Perrilein's character through witnessing her care for her father-in-law after he had a stroke. I saw Perielin and Jackson several times in 2022 and found Perrielin to be very involved and caring with Jackson.

Jaxon is developing normally, meeting all developmental and physical milestones.

Please contact this office for any questions.

**JERRY MICHAEL CLINE, MD, MPH**
Family Medicine & Obstetrics
City Free Clinic

Grassroots DPC

Grassroots Health at City Free Clinic
743 E. Tabor Ave.
Fairfield, CA 94533
(707) 247-2933
https://www.GrassrootsDPC.org

3/1/2023

Re: Drug Testing for Perrielin Sessions

To Whom This May Concern:

Perrielin Sessions is a patient under my care. She has been seen in our clinic for medication management and counseling services since August 2022. She was seen today for medical and counseling appointments.

Perrielin has informed me that she requires weekly monitored urine drug testing. We are able to provide that service here. She may follow up weekly for testing at:

743 E. Tabor Ave
Fairfield, CA 94533

Please contact this office for any questions.

JERRY MICHAEL CLINE, MD, MPH
Admin@GrassrootsHealth.Sprucecare.com
707-247-2933

[redacted] STATEMENT OF FACTS

[redacted]

- [redacted]

March 2024 & April 2024 Reports

These records show:

- Six placements, including injury, DUI, and trauma
- Suppressed evidence of harm in foster care
- Strong parent – child bond acknowledged by the judge
- Mother not dangerous – APRIL 18, 2024 hearing on Record
- Mother the one consistent person in the child's life
- Agency misconduct
- Judicial confusion
- Misapplication of law
- Blocked evidence
- Flawed bonding study
- Retaliatory attempt to disqualify the judge

[redacted] CLAIMS FOR RELIEF

Claim 1 – Brady-Type Suppression of Exculpatory Evidence

(14th Amendment Due Process)

Respondents suppressed:

- DUI incident where child was endangered – Defendant Katrina Lohre &
- Injuries in foster placements – Cecilia Lopez, Brian Bauknight/Supervisor
- Six placement disruptions – ALL Defendants
- CASA reports contradicting agency reports –
- Contact notes showing child sought mother – Already Submitted
- Evidence undermining bonding study
- Evidence of mother's sobriety – May 2024-Nov 2024
- Evidence of agency misconduct

Judge Rios stated:

"Had I known this information... we would be having this conversation back then."
She is referencing to the DUI incident

This is classic Brady suppression.

CLAIM 2 – Structural Due – Process Violations

(Automatic reversal required)

Structural Errors include:

- Blocked drug tests
- Blocked expert testimony
- Incomplete bonding study
- Misapplication of Caden C – Nov 2024
- Misapplication of 388 – Nov 2024
- Retaliatory attempt to disqualify the judge
- Judicial confusion and lack of full information
- Reliance on false evidence – Aug 2022 - Nov 2024
- Suppression of exculpatory evidence
- Removal without clear and convincing evidence – Aug 17, 2022

Structural errors require reversal under:

- Arizona v Fulminante, 499 U.S. 279 (1991)
- Santosky v Kramer 455 U.S. 745

CLAIM 3 – Fraud on the Court

(Hazel-Atlas Glass Co. V Hartford-Empire Co.)

Respondents:

- Misrepresented scientific facts – The County Counsel
- Misrepresented mother's sobriety – County Counsel, Ms. Lopes
- Misrepresented visitation
- Misrepresented attachment
- Misrepresented safety concerns
- Provided incomplete records to the bonding expert – Bianca Lopes

[redacted] CUSTODY REQUIREMENT

Termination of parental rights constitutes a severe restraint on liberty under:

- Santosky v Kramer, 455 U.S. 745 (1982)
- Troxel v Granville, 530 U.S. 57 (2000)
- Stanley v Illnois, 405 U.S. 645 (1972)

Petitioner is "in custody" for habeas purposes because she is subject to:

- A state judgement terminating her parental rights
- Ongoing state supervision
- Loss of fundamental familial liberty

[redacted] EXHAUSTION OF STATE REMEDIES

Petitioner exhausted state remedies through:

- Direct appeal (A171814)
- Petition for review
- State habeas filings
- Motions to vacate in juvenile court

To the extent any claim is deemed unexhausted, exhaustion should be excused because:

- The state process was structurally defective
- The state courts relied on false, incomplete, or suppressed evidence
- The state courts applied incorrect legal standards
- The state courts refused to correct constitutional violations

jittery". Ms. Sessions reported to officers that she thought that the baby may had swallowed one of the grandparent's pills, due to "them always leaving the bottles to the medications open." [redacted]

**In person interview with the mother, Perrielin Sessions**

[redacted]

(1) ☐ The CWS Department has made efforts to identify individuals who are important to the child and to maintain the child's relationship with those individuals, consistent with the child's best interest.

(2) ☐ The CWS Department has not made efforts to identify individuals who are important to the child and to maintain the child's relationship with those individuals, consistent with the child's best interest.

(3) ☐ To identify individuals who are important to the child and to maintain the child's relationship with those individuals, that CWS Department must provide the services ☐ as stated on the record ☐ as follows: .

**The following orders pertain to the:**

- **(relationship to child) mother, Perrielin Sessions**

5. **LEVEL OF PROGRESS:**

a. The person has made the indicated level of progress toward alleviating or mitigating the causes necessitating placement:

☐ none ☐ minimal ☒ adequate

☐ substantial ☐ excellent

6. **DETRIMENT FINDING**

By a preponderance of the evidence, the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.

(1) The factual basis for this order is as: ☒ stated in agency's report ☐ on the record.

7. ☒ **REUNIFICATION SERVICES ARE CONTINUED**

a. For the persons ☒ as previously ordered ☐ as modified on the record.

b. The likely date by which the child may be returned to and safely maintained in the home or placed for adoption, tribal customary adoption, legal guardianship, placed with a fit and willing relative or in another planned permanent living arrangement is (specify date):

8. **HEALTH DECISIONS**

The person is ☐ unable ☐ unwilling ☐ unavailable to make decisions regarding the child's needs for medical, surgical, dental, or other remedial care, and the right to make these decisions is suspended under Welf. & Inst. Code, § 369 and vested with the CWS Department.

9. ( **ADVISEMENT AT SIX (6) MONTH HEARING**

The court informed all parties present at the time of the hearing and further advises all parties that if the child is not returned to the home at the permanency hearing set on a date within months from the date the child enter foster care, the case may be referred to a Selection and Implementation hearing under Welfare & Institutions Code § 366.26 **that may result in the termination of parental rights and adoption of the child and other members of the sibling group or, in the case of an Indian child for whom tribal customary adoption under section 366.24 is selected as the permanent plan, modification of parental rights and the adoption of the child and other members of the sibling group.**

**Twelve-month permanency hearing date: 09/21/2023**

**VacaValley Hospital**

## Progress/Visit Notes

| | |
|---|---|
| Document Type: | ED Physician Notes |
| Result Status: | Auth (Verified) |
| Perform Information: | Ankney,William A M.D.(8/17/2022 02:05 PDT) |
| Authentication Information: | Ankney,William A M.D.(8/17/2022 06:05 PDT); Ankney,William A M.D.(8/17/2022 06:05 PDT); Ankney,William A M.D. (8/17/2022 05:39 PDT); Ankney,William A M.D.(8/17/2022 05:31 PDT); Ankney,William A M.D.(8/17/2022 05:28 PDT); Ankney,William A M.D.(8/17/2022 05:13 PDT); Ankney,William A M.D.(8/17/2022 05:10 PDT); Ankney,William A M.D. (8/17/2022 02:11 PDT) |
| Signed by: | Ankney,William A M.D.(8/17/2022 06:05 PDT) |

**General Medical Problem *ED**

Patient: **PRIMEAUX, PAUL** **MRN: 858102** **FIN: 015096936**
Age: **20 months** Sex: **Male** DOB: **11/25/2020**
[redacted]
Author: **Ankney, William A M.D.**

**Basic Information**

**Vital Signs**
Vital Signs
[redacted]
1.49hrs ↕ between

| | | |
|---|---|---|
| 08/17/2022 00:46 PDT | Temperature Rectal | 99.7 DegF |
| | Heart Rate | 130 bpm |
| | Respiratory Rate | 30 br/min |
| | **Systolic Blood Pressure** | **114 mmHg HI** |
| | Diastolic Blood Pressure | 57 mmHg |
| | Blood Pressure Via | Auto . |

Height/Weight/Measurements

| | | |
|---|---|---|
| 08/17/2022 00:46 PDT | Height Method | Unable to obtain |
| | Clinical Weight | 10.7 kg |
| | Clinical Weight Method | Infant scale . |

Oxygen Saturation
[redacted]

| | | |
|---|---|---|
| 08/17/2022 00:46 PDT | Oxygen Saturation | 95 % . |

**Time Seen:** Time Seen by ED Provider:

**Time Seen by ED provider:**

08/17/22 02:04

**History source:** Mother
**Arrival mode:** Mode of Arrival from nursing Triage Note : Mode of Arrival
08/17/2022 00:46 PDT Mode of Arrival Carried
**History limitation:** None.
**Additional information:** Chief Complaint from Nursing Triage Note : Chief Complaint

# PEDIATRIC VITAL SIGNS REFERENCE CHART

| Age | Awake | Asleep |
|---|---|---|
| Neonate (<28 d) | 100-205 | 90-160 |
| Infant (1-12 mos) | 100-190 | |
| Toddler (1-2 y) | 98-140 | 80-120 |
| Preschool (3-5 y) | 80-120 | 65-100 |
| School-age (6-11 y) | 75-118 | 58-90 |
| Adolescent (12-15 y) | 60-100 | 50-90 |

**Respiratory Rate (breaths/min)**

| Age | Normal |
|---|---|
| Infant (<1 y) | 30-53 |
| Toddler (1-2 y) | 22-37 |
| Preschool (3-5 y) | 20-28 |
| School-age (6-11 y) | 18-25 |
| Adolescent (12-15 y) | 12-20 |

*Reference: PALS Guidelines, 2015*

**Blood Pressure (mmHg)**

| Age | | Systolic | Diastolic | Systolic Hypotension |
|---|---|---|---|---|
| Birth (12 h) | <1 kg | 39-59 | 16-36 | <40-50 |
| | 3 kg | 60-76 | 31-45 | <50 |
| Neonate (96 h) | | 67-84 | 35-53 | <60 |
| Infant (1-12 mos) | | 72-104 | 37-56 | <70 |
| Toddler (1-2 y) | | 86-106 | 42-63 | <70 + (age in years × 2) |
| Preschool (3-5 y) | | 89-112 | 46-72 | |
| School-age (6-9 y) | | 97-115 | 57-76 | |
| Preadolescent (10-11 y) | | 102-120 | 61-80 | <90 |
| Adolescent (12-15 y) | | 110-131 | 64-83 | |

*Reference: PALS Guidelines, 2015*
*For diagnosis of hypertension, refer to the 2017 AAP guidelines Table 4 & 5:*
*http://pediatrics.aappublications.org/content/early/2017/08/21/peds.2017-1904*

**Temperature (°C)**

| Method | Normal |
|---|---|
| Rectal | 36.6-38.0 |
| Tympanic | 35.8-38.0 |
| Oral | 35.5-37.5 |
| Axillary | 36.5-37.5 |

Ranges do not vary with age.
**Screening:** axillary, temporal, tympanic (↓ accuracy)
**Definitive:** rectal & oral (↑ reflection of core temp.)
*Reference: CPS Position Statement on Temperature Measurement in Pediatrics (2015)*

**Oxygen Saturation ($SpO_2$)**

$SpO_2$ is lower in the immediate newborn period. Beyond this period, a $SpO_2$ of **<90-92%** may suggest a **respiratory condition** or **cyanotic heart disease**.

Dr. Chris Novak & Dr. Peter Gill for www.pedscases.com
*(Edited March 2020 by Richard He)*

never had any parent be as in engaged in the care of their child, as I am with my son. I have also have had a supervisor tell me that he hears how I am a loving caring mom to my son.. In fact at one of the court hearings county counsel stated that I am very engaged of the care of my son.. I dont know how anyone can truly be okay with wanting to keep a little boy away from his mom that loves him so much..

**Name:** In re Caden C.

**Case #:** S255839

**Citation:** 11 Cal.5th 614

**Opinion Date:** 20210527

Summary

**It was error to treat a parent's lack of progress in addressing substance abuse and mental health issues as a categorical bar to establishing the parental benefit exception.** Caden C. was removed from mother at four years old, due to mother's drug use and mental health concerns. At the Welfare and Institutions Code section 366.26 hearing, mother argued that the parental benefit exception applied and the trial court agreed, ordering that Caden remain in foster care. County counsel appealed and the Court of Appeal reversed, holding that because the parent continued to struggle with substance abuse and mental health issues and because of the risks of foster care and benefits of the potential adoptive home, no reasonable court could find the child's relationship with his parent outweighed the benefits of adoption. The California Supreme Court reversed the opinion of the appellate court. At the section 366.26 hearing, if the parent shows that termination would be detrimental to the child for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan. The parental benefit exception requires that a parent must establish, by a preponderance of the evidence, that (1) the parent has regularly visited with the child (2) that the child would benefit from continuing the relationship and (3) that terminating the relationship would be detrimental to the child. This exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child. Thus, the court should not look to whether the parent can provide a home for the child; the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home. While parents need not show that they are actively involved in maintaining their sobriety or complying substantially with their case plan, their struggles are relevant

**Name:** In re B.D.

**Case #:** D078014

**Division:** 1

**Citation:** 66 Cal.App.5th 1218

**Opinion Date:** 20210727

Summary

**The juvenile court considered improper factors when addressing whether the parents had met their burden regarding the parental benefit exception to adoption.** The minors were removed due to their parents' domestic violence and substance abuse issues. Reunification services to the parents were terminated due to their failure to make significant progress. At a contested 366.26 hearing, the juvenile court found that the parents had consistently visited the minors but they did not fulfill a parental role, and terminated parental rights. The appellate court reversed the orders. For the beneficial parent-child relationship exception to apply, a parent must show (1) regular visitation; (2) that the child has a substantial, positive, emotional attachment to the parent, and (3) terminating that attachment would be detrimental to the child. The readiness of parents to have a child returned to their custody is not relevant to the application of the parental benefit exception. The record suggests that in finding the parents did not meet their burden of proof, the juvenile court relied heavily, if not exclusively, on the fact that the parents had not completed their reunification plans and were unable to care for the children based on their long term and continued substance abuse. The juvenile court considered improper factors at the second step of the analysis and thus, the case was remanded for the juvenile court to hold a new section 366.26 hearing in conformity with the principles articulated in *In re Caden C.* (2021) 11 Cal.5th 614. On remand the juvenile court shall consider whether the parents' continued struggles with the issues that resulted in the dependency proceeding impacted the amount of visitation, the nature of that contact, or otherwise negatively affected the parent-child relationship.

- When it comes to the bond that my son and I share is truly something special, and anyone who has ever had any knd of contact with my son and myself has seen the special bond... The entire department, everyone has told me throughout this entire case I am one of a kind parent. Cecial Lopez in fact when she was the social worker told me that in her entire time of being a social worker she has

including post-traumatic stress, anxiety, mood, psychotic or substance use disorders. The feeling of safety and the associated ability to bond with others, the ability to detect and respond to threat, as well as the ability to regulate one's own emotions and stress are vital. Early reprogramming of neural circuits underlying these functions can directly or indirectly alter the child's physical, emotional and cognitive development and causes lifelong changes..

**Name:** In re J.D.

**Case #:** A161973

**Division:** 2

**Citation:** 70 Cal.App.5th 833

**Opinion Date:** 20210929

**Subsequent History:** Mod. 10/27/2021

Summary

**The juvenile court must carefully examine the relationship between mother and son consistent with *Caden C.*, to decide whether their relationship is of such a nature that it is in the child's best interests for that relationship to endure.** Held: The order terminating mother's parental rights is reversed and the matter is remanded for the juvenile court to conduct a new section 366.26 hearing consistent with *In re Caden C.* (2021) 11 Cal.5th 614. Here the Court of Appeal found that in evaluating the record, the agency had provided very little information in its prior reports during the case about the quality of mother's relationship with J.D. or even the nature of her interactions with him during visitation. "That was not appropriate and did a disservice to not just mother and J.D. but also the juvenile court." Social worker assessments and evaluations should address whether or not the children have a substantial, positive, emotional attachment to the parents taking into consideration the child's age, the portion of the child's life spent in parental custody, the positive or negative impact of interaction with the parent, and the child's particular needs as required by *Caden C.*" (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1230, fn. 5; see also *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 ["the nature and extent of the particular [parent-child] relationship should be apparent" by the time of the section 366.26 hearing because "[s]ocial workers, interim caretakers and health professionals will have observed the parent and child interact and provided information to the court"].