Perrielin Sessions
113 Calle Jalisco
Vacaville CA, 95687
(707)-372-3064
Perriewinkle37@gmail.com
Petitioner, In Propria Persona Capacity

FILED
JUL 08 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERRIELIN SESSIONS,<br>Plaintiff,<br>v.<br>SOLANO COUNTY HEALTH AND SOCIAL SERVICES, et al.,<br>Defendant. | Case No. 2:25-cv-02936-DAD-CKD (PS)<br><br>PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS |

TO THE HONORABLE DALE A. DROZD, UNITED STATES DISTRICT JUDGE:

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Local Rule 304, Plaintiff Perrielin Sessions respectfully submits the following objections to the Findings and Recommendations entered on June 26, 2026, recommending dismissal of the First Amended Complaint without further leave to amend.

Plaintiff respectfully submits that the Findings and Recommendations apply several legal doctrines more broadly than controlling precedent permits and, in doing so, overlook material distinctions between an impermissible appeal from a state court judgment and an independent action under 42 U.S.C. § 1983 seeking damages for constitutional violations allegedly committed by state actors before, during, and independent of the dependency proceedings.

Plaintiff further respectfully submits that the Findings assume she possessed a meaningful opportunity to litigate many of the constitutional issues now presented in this action during the underlying juvenile dependency proceedings. As explained below, that assumption does not accurately reflect the procedural history of the dependency litigation or the limitations Plaintiff encountered throughout both the trial and appellate proceedings.

These objections are not an attempt to relitigate the merits of the juvenile court's custody determinations or to seek appellate review of state court judgments. Rather, Plaintiff challenges the independent conduct of individual government officials alleged to have

acted under color of state law by fabricating evidence, omitting material facts, interfering with Plaintiff's constitutionally protected familial relationship, violating procedural due process, and otherwise depriving Plaintiff of rights secured by the Constitution and laws of the United States. These claims seek damages for alleged constitutional torts committed by state actors and therefore present issues that are distinct from the correctness of the juvenile court's ultimate orders.

For the reasons set forth below, Plaintiff respectfully requests that the District Court decline to adopt the Findings and Recommendations, deny dismissal of the First Amended Complaint, or, alternatively, grant Plaintiff leave to amend to address any pleading deficiencies identified by the Court.

# I. INTRODUCTION

Plaintiff Perrielin Sessions respectfully objects to the Findings and Recommendations entered on June 26, 2026, recommending dismissal of her First Amended Complaint without further leave to amend. The recommendation should not be adopted because it applies Rooker-Feldman, claim preclusion, and pleading standards in a manner that improperly collapses Plaintiff's independent federal civil-rights claims into an assumed challenge to the juvenile court judgment.

Plaintiff does not seek appellate review of the juvenile court's orders. She seeks damages under 42 U.S.C. § 1983 against individual county actors for alleged constitutional violations committed under color of state law, including fabrication and omission of material evidence, reliance on an unconfirmed toxicology screen, warrantless removal without adequate exigency, deprivation of meaningful procedures, obstruction of family

placement, interference with familial association, failure to protect P.P. while in state-directed care, and failure to comply with ICWA-related duties. These allegations appear throughout the First Amended Complaint and were pleaded as independent injuries caused by Defendants' conduct, not merely as disagreement with the juvenile court's final rulings.

The Findings and Recommendations acknowledge that Plaintiff alleged seven federal claims, including judicial deception/fabrication, unlawful removal, procedural due process violations, failure to protect, visitation interference, ICWA violations, and interference with relative placement. Nevertheless, the recommendation concludes that the claims are barred or inadequately pleaded. Plaintiff respectfully submits that this conclusion overlooks the distinction between an impermissible de facto appeal and a permissible § 1983 damages action based on alleged misconduct by state actors preceding and independent of the state-court judgment.

The recommendation also assumes that Plaintiff could have raised these issues during the dependency proceedings. That assumption is incomplete. Plaintiff was represented by appointed counsel during critical stages of the juvenile proceedings and on appeal. Plaintiff repeatedly attempted to have constitutional, evidentiary, ICWA, visitation, placement, and due process issues presented, but counsel either declined to raise them or advised that no arguable issues existed. Plaintiff therefore did not receive a meaningful opportunity to litigate many of the federal constitutional claims now asserted. In addition, the juvenile dependency court was not a forum capable of awarding § 1983 damages against individual county actors.

For these reasons, Plaintiff respectfully requests that the District Court conduct de novo review, decline to adopt the Findings and Recommendations, permit the First Amended Complaint to proceed past screening, or alternatively grant leave to amend to clarify the independent federal claims and the reasons those claims were not meaningfully litigated in the dependency proceedings.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), a district judge must make a **de novo determination** of those portions of a magistrate judge's findings and recommendations to which specific written objections are made. Likewise, Federal Rule of Civil Procedure 72(b)(3) requires the district court to determine de novo any part of the magistrate judge's disposition that has been properly objected to and authorizes the Court to accept, reject, modify, receive further evidence, or recommit the matter to the magistrate judge with instructions.

At the screening stage, the Court's review is governed by 28 U.S.C. § 1915(e)(2). Although the Court must determine whether the complaint states a claim upon which relief may be granted, it must also construe the pleadings of a pro se litigant liberally and afford the plaintiff the benefit of every reasonable inference arising from the well-pleaded factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

When evaluating the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6), which provides the analogous standard for screening under § 1915(e)(2), the Court must accept all well-pleaded factual allegations as true and construe those allegations in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). While legal conclusions are not presumed true, factual allegations need only contain sufficient matter to state a claim that is plausible on its face.

Moreover, because Plaintiff proceeds without counsel, the Ninth Circuit has consistently held that pro se pleadings must be liberally construed, particularly in civil rights actions, and should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief under any cognizable legal theory. *Hebbe*, 627 F.3d at 342; *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th Cir. 1988).

In conducting its de novo review, this Court should therefore determine whether the Findings and Recommendations correctly applied the jurisdictional doctrines of the Rooker-Feldman doctrine and claim preclusion, whether the First Amended Complaint plausibly alleges independent constitutional violations under 42 U.S.C. § 1983, and whether dismissal without further leave to amend is warranted under the liberal pleading standards applicable to pro se litigants. Because the First Amended Complaint alleges specific factual misconduct by individual state actors—including alleged fabrication of evidence, omission of exculpatory information, unlawful interference with Plaintiff's familial relationship, procedural due process violations, failures relating to ICWA inquiry and notice, and deliberate indifference while P.P. was in state custody—the Court should review each claim independently rather than characterize the action as a prohibited collateral attack upon the underlying dependency judgment.

# III. OBJECTION NO. 1

**The Findings and Recommendations Err in Concluding that the Rooker-Feldman Doctrine Bars Plaintiff's Independent Constitutional Claims**

Plaintiff respectfully objects to the Findings and Recommendations insofar as they conclude that the First Amended Complaint constitutes an impermissible de facto appeal of the underlying juvenile dependency proceedings under the Rooker-Feldman doctrine. Respectfully, the Findings characterize Plaintiff's claims too broadly and fail to distinguish between claims seeking appellate review of a state-court judgment and claims seeking damages for independent constitutional injuries allegedly committed by state officials acting under color of state law before, during, and apart from the judicial proceedings themselves.

The United States Supreme Court has repeatedly emphasized that the Rooker-Feldman doctrine is a narrow jurisdictional doctrine, limited to cases brought by state-court losers complaining of injuries caused by state-court judgments themselves and inviting federal district court review and rejection of those judgments. It does not bar every federal claim that merely relates to or arises from the same factual circumstances surrounding state-court litigation.

The First Amended Complaint does not request that this Court vacate, reverse, modify, or otherwise invalidate the orders entered by the Solano County Juvenile Court. Rather, Plaintiff seeks damages under 42 U.S.C. § 1983 against individual county employees based upon alleged violations of clearly established constitutional rights committed while acting under color of state law. These allegations include, among other things:

- the alleged reliance upon an unconfirmed presumptive toxicology screening result

as though it constituted confirmed scientific evidence;

- the alleged fabrication, omission, or reckless presentation of material facts in investigative reports submitted to the Juvenile Court;
- the alleged warrantless removal of Plaintiff's minor child without judicial authorization and without constitutionally sufficient exigent circumstances;
- the alleged denial of procedural due process through inadequate notice, delayed proceedings, and restrictions upon Plaintiff's ability to present evidence;
- alleged interference with Plaintiff's constitutionally protected familial relationship through visitation restrictions and contact termination;
- alleged failures to protect P.P. while in state-directed foster care despite documented notice of repeated injuries and safety concerns; and
- alleged failures to conduct adequate inquiry and notice required under the Indian Child Welfare Act after Defendants possessed information indicating potential tribal ancestry.

Each of these alleged constitutional injuries is attributed to the conduct of individual government officials rather than to the existence of the state-court judgment itself. Plaintiff's claims therefore arise from Defendants' alleged actions, not from the judicial decisions subsequently entered during the dependency proceedings.

Indeed, many of the alleged constitutional violations necessarily occurred before the juvenile court had the opportunity to adjudicate the dependency petition. For example, Plaintiff alleges that Defendants relied upon an unconfirmed toxicology screen despite hospital records identifying it only as a presumptive screening result, treated that

screening result as definitive evidence without confirmatory testing, omitted exculpatory medical information, and initiated removal proceedings based upon allegedly fabricated or materially misleading factual representations. Plaintiff further alleges that the warrantless seizure of P.P. occurred without immediate exigent circumstances and before any judicial authorization had been obtained.

These allegations concern investigative conduct and executive decision-making that preceded the juvenile court's exercise of jurisdiction. Whether those actions complied with the Fourth and Fourteenth Amendments presents a question distinct from whether the juvenile court ultimately reached legally correct dependency determinations based upon the record before it.

The Findings conclude that Plaintiff's claims are "inextricably intertwined" with the dependency judgment because success on the claims would allegedly require this Court to conclude that the juvenile court reached the wrong result. Respectfully, that conclusion overlooks the distinction between reviewing the correctness of a judicial decision and determining whether government officials violated the Constitution through their own conduct before that decision was rendered. A finding that state officials violated Plaintiff's constitutional rights by allegedly fabricating evidence, omitting material facts, conducting an unreasonable seizure, or otherwise depriving Plaintiff of due process does not require this Court to sit as an appellate tribunal over the California dependency courts. Rather, it requires only that the Court determine whether Defendants' own actions satisfied constitutional standards governing state actors acting under color of law.

Moreover, Plaintiff does not seek restoration of parental rights, reversal of the termination

order, modification of custody, or any injunction directing the state court to alter its judgment. The First Amended Complaint seeks compensatory damages, punitive damages, declaratory relief concerning Defendants' conduct, costs, and any additional relief authorized by law against the individual Defendants. Such relief addresses alleged constitutional injuries caused by Defendants' conduct and is materially different from appellate review of the dependency judgment itself.

To the extent the Court determines that any individual allegation could be construed as challenging the correctness of a state-court determination, dismissal of the entire action is neither required nor appropriate. The Court should instead distinguish between those claims that directly challenge judicial decisions and those alleging independent constitutional torts committed by executive officials acting under color of state law. At the pleading stage, the Court must construe the complaint liberally in favor of a pro se litigant and permit independent constitutional claims to proceed where they are plausibly alleged. Accordingly, Plaintiff respectfully submits that the Rooker-Feldman doctrine does not deprive this Court of subject-matter jurisdiction over the independent constitutional claims asserted in the First Amended Complaint. The Findings and Recommendations should therefore not be adopted insofar as they conclude that the entirety of Plaintiff's § 1983 action constitutes a prohibited de facto appeal of the California dependency proceedings.

## IV. OBJECTION NO. 2

### Claim Preclusion Does Not Bar Plaintiff's Independent Federal Civil Rights Claims

Plaintiff respectfully objects to the Findings and Recommendations insofar as they

conclude that the First Amended Complaint is barred by principles of claim preclusion because the constitutional claims "were or could have been raised" during the underlying juvenile dependency proceedings.

Respectfully, that conclusion does not accurately reflect either the nature of this action or the procedural history of the dependency litigation. Claim preclusion does not apply here because (1) the claims asserted in this action could not have been fully adjudicated in the juvenile dependency court, (2) Plaintiff did not receive a full and fair opportunity to litigate the constitutional claims presented herein, and (3) the constitutional issues Plaintiff repeatedly sought to pursue were not presented by appointed counsel during either the dependency proceedings or the subsequent appeals.

***A. Plaintiff's § 1983 Damages Claims Could Not Have Been Adjudicated in the Juvenile Dependency Court.***

The present action arises under 42 U.S.C. § 1983 and seeks compensatory damages, punitive damages, declaratory relief, costs, and all other relief authorized by federal law against individual government employees alleged to have acted under color of state law. The First Amended Complaint expressly seeks relief for alleged violations of the First, Fourth, and Fourteenth Amendments and the Indian Child Welfare Act committed by individual Defendants during the investigation, removal, and administration of Plaintiff's dependency case.

The California juvenile dependency court, however, is a court of limited statutory jurisdiction whose function is to determine matters arising under the California Welfare and Institutions Code concerning the custody, protection, and welfare of dependent

children. It is not a forum for adjudicating civil rights damages actions brought under 42 U.S.C. § 1983 against county employees in their individual capacities.

Accordingly, Plaintiff could not have obtained the relief sought in this action within the dependency proceedings themselves. Because the claims asserted here seek remedies unavailable in the juvenile court, they are not identical to the issues adjudicated in the dependency action.

The Findings therefore err in concluding that Plaintiff's federal constitutional damages claims "could have been raised" in the dependency proceeding without considering the limited jurisdiction of that court or the distinct nature of a federal civil rights action.

### *B. Plaintiff Did Not Receive a Full and Fair Opportunity to Litigate These Constitutional Claims.*

Even where proceedings involve related factual circumstances, claim preclusion generally presupposes that the party against whom preclusion is asserted had a meaningful and full opportunity to litigate the claims at issue.

That opportunity was not present here.

Throughout the dependency proceedings, Plaintiff repeatedly attempted to challenge numerous aspects of the Department's investigation and the evidence upon which the removal of P.P. was based. Among other matters, Plaintiff disputed Defendants' reliance upon an unconfirmed toxicology screening result, alleged fabrication and omission of material facts, challenged the adequacy of ICWA inquiry and notice, objected to visitation restrictions, sought reconsideration of placement decisions, and contested numerous procedural irregularities affecting the fairness of the proceedings. These same categories

of constitutional allegations form the basis of the First Amended Complaint.

Despite Plaintiff's efforts, many of these constitutional issues were never adjudicated on their merits as independent federal claims. Rather, the dependency proceedings focused upon statutory questions concerning jurisdiction, reunification services, permanency planning, and termination of parental rights under California law.

The existence of those proceedings does not establish that Plaintiff received a meaningful opportunity to litigate federal constitutional tort claims seeking damages against individual government actors.

Accordingly, the assumption contained within the Findings—that Plaintiff simply failed to raise claims she was free to litigate—is incomplete and does not accurately reflect the procedural realities of the underlying case.

***C. Plaintiff Repeatedly Requested That Constitutional Issues Be Raised, But Appointed Counsel Did Not Present Many of Them.***

The Findings further conclude that Plaintiff has not asserted that she lacked the opportunity to challenge procedural shortcomings in the dependency proceedings. Respectfully, Plaintiff objects to that conclusion.

During substantial portions of the dependency proceedings, Plaintiff was represented by court-appointed counsel. Plaintiff repeatedly requested that numerous constitutional and evidentiary issues be presented to the juvenile court, including allegations concerning fabricated or misleading reports, omission of exculpatory evidence, procedural due process violations, deficiencies in ICWA inquiry and notice, interference with familial association, visitation restrictions, and other constitutional concerns.

Likewise, following entry of the juvenile court's orders, Plaintiff sought review through the appellate process. Plaintiff again requested that numerous constitutional issues be presented for appellate consideration. However, appointed appellate counsel either declined to raise many of the issues Plaintiff believed were meritorious or advised Plaintiff that no arguable appellate issues existed.

As a result, many of the constitutional claims asserted in the present § 1983 action were never presented for judicial determination through no voluntary decision by Plaintiff to abandon them.

Plaintiff does not rely upon these circumstances to assert an independent claim against appointed counsel in this action. Rather, Plaintiff presents this procedural history to demonstrate that she did not possess the meaningful opportunity to litigate these federal constitutional claims that claim preclusion ordinarily requires.

To hold otherwise would effectively preclude federal review of constitutional claims that were never actually adjudicated and could not have resulted in the federal damages relief sought here.

***D. The Constitutional Claims Asserted Here Are Materially Different From The Questions Decided In The Dependency Proceedings.***

The dependency proceedings primarily concerned whether California's statutory requirements for dependency jurisdiction, reunification services, review hearings, and termination of parental rights had been satisfied under the Welfare and Institutions Code. The present action asks different questions.

Among them:

- whether Defendants allegedly fabricated or omitted material evidence before

judicial proceedings commenced;

- whether Defendants allegedly conducted a warrantless seizure without constitutionally sufficient exigent circumstances;
- whether Defendants allegedly violated Plaintiff's procedural due process rights through independent investigative and administrative conduct;
- whether Defendants allegedly interfered with Plaintiff's constitutional right to familial association apart from the judicial rulings themselves;
- whether Defendants allegedly failed to protect P.P. while he remained in state custody despite notice of repeated injuries and safety concerns; and
- whether Defendants allegedly failed to discharge federally imposed duties relating to ICWA inquiry and notice after receiving information suggesting Native American ancestry.

These are independent constitutional questions concerning the conduct of executive officials acting under color of state law. They are not simply requests that this Court revisit or overturn the juvenile court's findings.

### *E. Conclusion*

For all of these reasons, Plaintiff respectfully submits that the Findings and Recommendations incorrectly conclude that claim preclusion bars this action. Because Plaintiff's § 1983 claims seek relief unavailable in the dependency court, because Plaintiff did not receive a full and fair opportunity to litigate these independent constitutional claims, and because many of the issues Plaintiff sought to raise were never presented despite her repeated requests to appointed counsel, the doctrine of claim preclu sion should

not operate to foreclose this federal civil rights action.

Accordingly, Plaintiff respectfully requests that the District Court decline to adopt this portion of the Findings and Recommendations and permit the First Amended Complaint to proceed.

# V. OBJECTION NO. 3

## The First Amended Complaint Adequately Alleges Independent Constitutional Injuries Sufficient to Survive Screening

Plaintiff respectfully objects to the Findings and Recommendations insofar as they conclude that the First Amended Complaint fails to state claims under the Fourteenth Amendment because the alleged conduct does not rise to the level of constitutional violations.

Respectfully, the Findings evaluate Plaintiff's allegations in a manner inconsistent with the pleading standards applicable at the screening stage under 28 U.S.C. § 1915(e)(2). When liberally construed, the First Amended Complaint alleges detailed factual misconduct by individual state actors that, if proven, could establish violations of clearly established constitutional rights. At this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and determine only whether those allegations plausibly state claims for relief.

The First Amended Complaint does substantially more than recite legal conclusions. It identifies specific defendants, identifies specific actions allegedly taken by those defendants, provides a detailed chronology of events, and connects those factual allegations to seven distinct constitutional claims asserted under 42 U.S.C. § 1983.

Specifically, Plaintiff alleges that Defendants:

- relied upon an unconfirmed presumptive toxicology screening result despite hospital records indicating that the result had never been confirmed and despite the subsequent destruction of the specimen;
- omitted or disregarded medical observations that Plaintiff alleges were inconsistent with methamphetamine intoxication;
- initiated and maintained dependency proceedings through allegedly fabricated or materially misleading factual representations concerning Plaintiff's substance-abuse history;
- removed Plaintiff's minor child without a warrant and without constitutionally sufficient exigent circumstances;
- delayed dependency proceedings while restricting Plaintiff's ability to challenge the allegations supporting removal;
- obstructed relative placement through allegedly false or misleading reporting regarding available family members;
- failed to protect P.P. from repeated documented injuries and unsafe foster-care placements after assuming responsibility for his care;
- burdened and ultimately terminated Plaintiff's visitation and familial association despite Plaintiff's participation in services; and
- failed to conduct adequate inquiry and notice after receiving information suggesting that ICWA duties had been triggered.

These are factual allegations, not mere legal conclusions. Whether Plaintiff can ultimately

prove those allegations is a matter for discovery, dispositive motions, or trial. At the screening stage, however, the Court must assume the truth of the pleaded facts and determine whether they plausibly describe unconstitutional conduct.

***A. Plaintiff Adequately Alleges Violations of Procedural Due Process.***

The Fourteenth Amendment protects a parent's fundamental liberty interest in the care, custody, and companionship of his or her child. Consistent with that principle, Plaintiff alleges that Defendants deprived her of meaningful procedural protections by relying upon unreliable evidence, restricting her ability to present exculpatory evidence, delaying proceedings, withholding material information, and otherwise preventing a fundamentally fair process before and throughout the dependency proceedings.

Taken as true, these allegations plausibly state a claim that Plaintiff was deprived of constitutionally adequate procedures before being separated from her child.

***B. Plaintiff Adequately Alleges Unlawful Interference with Familial Association.***

The First Amended Complaint further alleges that Defendants interfered with Plaintiff's constitutionally protected familial relationship by effecting the removal of P.P., imposing visitation restrictions, reducing contact over time, and ultimately terminating familial association through actions that Plaintiff alleges were based upon materially unreliable information rather than constitutionally sufficient evidence.

These allegations concern one of the oldest and most fundamental liberty interests recognized under the Constitution and therefore present substantially more than ordinary disagreements concerning social-work judgment.

### *C. Plaintiff Adequately Alleges Independent Misconduct by Individual Defendants.*

The Findings characterize Plaintiff's allegations as assertions of "bias, concealment, and submission of false reports."

Respectfully, the First Amended Complaint alleges considerably more.

Plaintiff identifies individual Defendants and attributes specific conduct to each, including alleged fabrication of evidence, omission of exculpatory information, reliance upon scientifically unconfirmed toxicology findings, obstruction of kinship placement, deliberate indifference to documented safety concerns while P.P. remained in foster care, interference with visitation, and failures relating to ICWA inquiry and notice.

Those allegations describe affirmative governmental conduct that allegedly caused independent constitutional injuries before and throughout the dependency proceedings. They are therefore materially different from generalized allegations of unfairness or dissatisfaction with the ultimate dependency judgment.

### *D. The Findings Improperly Resolve Factual Questions at the Pleading Stage.*

Several conclusions contained within the Findings effectively resolve disputed factual issues in Defendants' favor.

For example, the Findings conclude that Plaintiff's allegations fail to establish conduct sufficient to support constitutional liability. However, whether Defendants knowingly relied upon inaccurate information, omitted material facts, acted without sufficient exigency, disregarded exculpatory evidence, or failed to protect P.P. while in state custody are factual questions that cannot properly be resolved during screening before Defendants

have appeared, discovery has occurred, or evidence has been developed.

At this procedural stage, Plaintiff need only plead facts that make the asserted constitutional claims plausible. The First Amended Complaint satisfies that burden by providing detailed factual allegations concerning the actions of identified state officials and explaining how those actions allegedly deprived Plaintiff of rights secured by the Constitution and federal law.

### *E. Plaintiff Has Alleged Plausible Constitutional Claims.*

The Court is not presently called upon to determine whether Plaintiff will ultimately prevail on the merits of her claims. Rather, the question is whether the First Amended Complaint contains sufficient factual matter, accepted as true, to permit a reasonable inference that Defendants may be liable for the misconduct alleged.

Plaintiff respectfully submits that it does.

The complaint identifies the individuals involved, describes the allegedly unconstitutional conduct, alleges the constitutional rights implicated, explains how Defendants' conduct caused Plaintiff's injuries, and requests relief expressly authorized under 42 U.S.C. § 1983. These allegations are more than sufficient to permit the action to proceed beyond the initial screening stage.

Accordingly, Plaintiff respectfully requests that the District Court decline to adopt the Findings and Recommendations insofar as they conclude that the First Amended Complaint fails to state plausible constitutional claims.

# VI. OBJECTION NO. 4

## The Findings Apply an Unduly Restrictive Pleading Standard to Plaintiff's ICWA Allegations

Plaintiff respectfully objects to the Findings and Recommendations insofar as they conclude that the First Amended Complaint fails to state a claim concerning Defendants' obligations under the Indian Child Welfare Act ("ICWA").

Respectfully, the Findings evaluate Plaintiff's ICWA allegations as though Plaintiff were required, at the pleading stage, to conclusively establish that P.P. met the statutory definition of an "Indian child" under 25 U.S.C. § 1903(4). The First Amended Complaint, however, alleges a different constitutional and statutory injury.

Plaintiff alleges that Defendants possessed information sufficient to trigger ICWA-related inquiry and notice obligations but nevertheless failed to carry out those duties in the manner required by federal and California law. Those allegations concern Defendants' conduct during the dependency investigation and proceedings—not the ultimate determination of tribal membership itself.

### *A. Plaintiff's Claim Concerns Defendants' Alleged Failure to Fulfill Their Statutory Duties After Receiving Information Suggesting ICWA Applied.*

The First Amended Complaint alleges that Plaintiff informed Defendants of Native American ancestry, that Defendants had information indicating potential tribal affiliation, and that official reports acknowledged information regarding Native American heritage within P.P.'s family. Plaintiff further alleges that these facts provided Defendants with a substantial basis to conduct a complete and accurate ICWA inquiry and to comply fully with all applicable notice requirements.

The complaint therefore challenges the adequacy of Defendants' investigation and compliance with their statutory obligations after receiving information suggesting that ICWA duties had been triggered.

At this stage, Plaintiff need not prove that a tribe ultimately determined that P.P. was an "Indian child." Rather, Plaintiff alleges that Defendants failed to properly discharge the inquiry and notice responsibilities imposed upon child welfare agencies once they possessed information giving rise to those obligations.

Whether Defendants adequately fulfilled those responsibilities presents a factual question that cannot properly be resolved at screening.

***B. The Findings Conflate the Ultimate Merits With the Pleading Standard.***

The Findings state that Plaintiff's allegations concerning Native American ancestry are insufficient because they do not establish that P.P. qualified as an "Indian child" within the meaning of 25 U.S.C. § 1903(4).

Respectfully, that analysis addresses the ultimate merits of an ICWA determination rather than the sufficiency of Plaintiff's allegations concerning Defendants' conduct.

The First Amended Complaint does not merely allege that P.P. possessed Native American ancestry. Instead, it alleges that Defendants received information giving them reason to investigate further, that they recognized the potential applicability of ICWA, and that they nevertheless failed to carry out the inquiry and notice obligations imposed upon them by law.

Whether those allegations are ultimately supported by evidence is a matter for discovery and, if appropriate, summary judgment or trial. At the pleading stage, however, Plaintiff

need only allege facts that plausibly suggest Defendants failed to comply with their statutory duties.

### *C. Plaintiff Adequately Alleges Independent Injury Arising From Defendants' Conduct.*

Plaintiff's ICWA claim is not based solely upon the eventual outcome of the dependency proceedings. Rather, Plaintiff alleges that Defendants' failures deprived both Plaintiff and P.P. of procedural protections created by federal law for families with potential Native American heritage.

Those alleged injuries are independent of the juvenile court's ultimate custody determination and arise from Defendants' own conduct during the investigation and administration of the dependency proceedings.

Accordingly, the complaint alleges more than a disagreement with the juvenile court's conclusion concerning ICWA. It alleges that Defendants themselves failed to perform duties imposed upon them before the juvenile court reached that conclusion.

### *D. Dismissal at the Screening Stage Is Premature.*

Construing the First Amended Complaint liberally, as required for a pro se litigant, Plaintiff has alleged facts from which the Court may reasonably infer that Defendants possessed information sufficient to trigger additional ICWA responsibilities and that they failed to fulfill those responsibilities adequately.

Those factual allegations must be accepted as true at the pleading stage.

Whether Defendants actually complied with federal and state ICWA requirements cannot properly be resolved before the factual record has been developed.

Accordingly, Plaintiff respectfully submits that the Findings improperly apply a heightened pleading burden to her ICWA allegations and prematurely resolve factual questions that should not be decided during screening under 28 U.S.C. § 1915(e)(2). For these reasons, Plaintiff respectfully requests that the District Court decline to adopt the Findings and Recommendations insofar as they recommend dismissal of Plaintiff's ICWA claim.

## VII. <u>OBJECTION NO. 5</u>

### Dismissal Without Further Leave to Amend Is Premature and Inconsistent with Ninth Circuit Precedent

Plaintiff respectfully objects to the Findings and Recommendations insofar as they recommend dismissal of the First Amended Complaint **without further leave to amend.** The Ninth Circuit has consistently recognized that leave to amend should be granted with "extreme liberality," particularly where a litigant proceeds pro se and amendment is not clearly futile. Dismissal without leave to amend is appropriate only when it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment. Respectfully, that standard has not been satisfied here.

The Findings recommend dismissal principally upon jurisdictional doctrines, claim preclusion, and pleading deficiencies rather than upon any determination that Plaintiff could never allege a viable federal constitutional claim arising from Defendants' conduct. Indeed, the Findings acknowledge the nature of Plaintiff's allegations—including judicial deception, fabrication and omission of evidence, unlawful removal, procedural due

process violations, interference with familial association, failures relating to ICWA, and failures to protect P.P. while in state-directed care—but conclude those allegations either are barred or are insufficiently pleaded.

Even assuming, solely for purposes of argument, that the Court concludes certain allegations require greater factual specificity or additional clarification, those perceived deficiencies are capable of being addressed through amendment.

For example, Plaintiff could, if granted leave to amend:

- further distinguish injuries caused by Defendants' alleged conduct from injuries resulting from the juvenile court's orders;
- clarify that the action seeks damages for independent constitutional torts committed by state actors rather than appellate review of dependency decisions;
- plead additional factual allegations demonstrating that many constitutional claims arose before the dependency court entered any orders;
- further identify the actions attributable to each individual Defendant;
- provide additional factual detail regarding Defendants' alleged reliance upon unconfirmed toxicology evidence, omission of exculpatory information, interference with familial association, and failures relating to ICWA inquiry and notice;
- further explain why Plaintiff did not receive a meaningful opportunity to litigate these independent constitutional claims during the dependency proceedings or subsequent appeals; and
- provide any additional factual allegations the Court determines are necessary to

satisfy the applicable pleading standards.

None of these potential amendments would fundamentally alter the nature of Plaintiff's claims. Rather, they would provide additional factual clarification concerning allegations already set forth within the First Amended Complaint.

Moreover, because Defendants have not yet been served and no responsive pleading has been filed, permitting amendment would not prejudice any Defendant. This matter remains at the initial screening stage under 28 U.S.C. § 1915(e)(2), and no scheduling order has been issued.

The absence of prejudice weighs strongly in favor of allowing amendment if the Court concludes that further clarification would assist in resolving the issues presented.

Plaintiff has also acted in good faith throughout these proceedings. After the Court identified concerns with the original complaint, Plaintiff timely filed a comprehensive First Amended Complaint in an effort to address those concerns by identifying individual Defendants, separating the constitutional claims into distinct causes of action, and providing substantially greater factual detail.

These actions demonstrate Plaintiff's willingness to comply with the Court's instructions and weigh against dismissal with prejudice at the screening stage.

Accordingly, even if the District Court concludes that any portion of the First Amended Complaint remains deficient, Plaintiff respectfully requests that dismissal without further leave to amend not be adopted. Instead, Plaintiff requests leave to file a Second Amended Complaint addressing any deficiencies identified by the Court.

# VIII. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that the Findings and Recommendations should not be adopted.

Construing the First Amended Complaint liberally, as required for a self-represented litigant, Plaintiff has alleged plausible claims under 42 U.S.C. § 1983 arising from independent constitutional injuries allegedly committed by state actors acting under color of state law. Those claims challenge Defendants' investigative, administrative, and executive conduct rather than seeking appellate review of the California juvenile dependency judgment. The doctrines of Rooker-Feldman and claim preclusion therefore do not require dismissal of the action at the pleading stage, and the allegations contained within the First Amended Complaint are sufficient to permit the litigation to proceed beyond initial screening.

Furthermore, Plaintiff respectfully submits that the Findings prematurely resolve disputed factual issues, apply an unduly restrictive interpretation of the pleading standards governing pro se litigants, and impose a level of factual proof that exceeds what is required under Federal Rule of Civil Procedure 8 at the screening stage.

Accordingly, Plaintiff respectfully requests that this Court:

1. Conduct a **de novo** review pursuant to 28 U.S.C. § 636(b)(1);
2. Decline to adopt the Findings and Recommendations entered on June 26, 2026;
3. Deny the recommendation that this action be dismissed;
4. Permit Plaintiff's First Amended Complaint to proceed for service upon Defendants; or, in the alternative,

5. Grant Plaintiff leave to file a Second Amended Complaint to address any pleading deficiencies the Court identifies.

Plaintiff further requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Dated:** June 30th 2026

**Perrielin Sessions** **SIGNATURE:** Perrielin Sessions

Plaintiff, Pro Se

**To Whom it may concern:** CASE # 2:25-CV-02936

My name is Perrielin, and this statement is the truth of who I am – not the version of me that has been assumed, misrepresented, or rewritten by others, but the truth I have lived, the mother I have always been, and the pain I continue to carry because of false allegations that tore apart my family.

I became a mother at 18 years old, and from that moment forward, my life was shaped by responsibility, sacrifice, and unconditional love. I raised two children on my own – not because it was easy, not because I had endless support, but because I was determined to give them stability, safety, and a mother they could depend on. I worked, I provided, and I showed up every single day. I made sure my children had a home filled with love, structure, and consistency.

Despite the challenges of young motherhood, I graduated high school and went on to become a Certified Nursing Assistant. I built a career through dedication and perseverance. I balanced work, parenting, and life with determination because my children deserved a mother who showed them what strength looks like. I have always been a wonderful mother – loving, attentive, protective, and deeply committed to my children's well-being.

That is who I was long before I became pregnant with my son, Jaxson. And that is who I remained throughout my pregnancy and beyond. I want to state this clearly and without hesitation: I NEVER USED ANY SUBSTANCES DURING MY PREGNANCY WITH [redacted] son.

I do not have a history of substance abuse. I lived a short moment of addiction. Any allegation suggesting otherwise is false, unfounded, and deeply damaging. These accusations were not based on evidence, behavior, or truth – they were assumptions and narratives created by others, not by my actions. Throughout my pregnancy, I was intentional, careful, and deeply protective. I followed medical guidance, attended appointments, and made every decision with Jaxson's health in mind. I took care of my body because I understood that everything, I did affected him. I nurtured him before he ever took his first breath. I talked to him, played music for him, and imagined the life I wanted to give him.

A life filled with love, safety, and the same devotion I already given my older children. When Jaxson was born, I stepped into motherhood with him just as I had with my other children – fully, completely, and with every part of my heart. I knew his cries, his rhythms, his needs. I was the one who comforted him, fed him, held him close, and created a world where he felt safe and loved. My bond with him was immediate, deep, and unbreakable.

And I didn't just care for him – I poured myself into raising him

I made all of Jaxson's baby food from scratch – sweet potatoes, apples, peas, carrots – because I wanted him to have the healthiest start possible. I took pride in preparing his meals with my own hands, knowing exactly what went into his body. It was one of the many ways I showed my love

for him. I taught him sign language, starting with simple signs like "more," "milk," and "all done," because I wanted him to have tools to communicate before he could speak. He was so smart – he picked up signs quickly, and every time he signed back to me, his little face would light up with pride. We practiced his numbers and his ABC's, though he was still so young. I would sing the alphabet to him, count with him, point to letters and shapes, and he would smile, laugh, and try to mimic the sounds. He loved learning. He loved being engaged. And he loved me being the one to teach him.

We did everything together. Every day, every moment, every routine – it was me and Jaxson. We planted pumpkins in the garden. We went on walks. We drew pictures. We played with his toys – Buzz Lightyear, Woody, Hot wheels. We splashed in his little pool. We played in bubbles. We cuddled. We laughed. We learned. We lived our days side by side. He called me "my mama" in a way that melted my heart every single time. The way he looked at me – with pure, innocent, unconditional love – is something I will never forget. I was his safe place. His comfort, his home.

That is the truth of who I am as a mother. But despite my history, my dedication, and my love, false allegations were made against me – allegations that painted me as someone I am not. These claims suggested I used substances, that I lived a lifestyle that endangered my child, that I was anything other than a loving and responsible mother. These accusations were not only untrue, they were devasting. They erased my years of motherhood, my sacrifices, my accomplishments, and the life I had built for my children. And the consequences of those false allegations were catastrophic.

Losing Jaxson broke something inside me that I cannot fully put into words. It was not just the loss of custody – it was the loss of daily moments, the loss of his laughter, the loss of his warmth in my arms. It was the loss of the future I had imagined for him. It was the loss of being his mama in the way I had from the moment he was born. The emotional impact of losing him something I carry every single day. It is a grief that sits in my chest, heavy and unrelenting. It is waking up and reaching for a child who is not there. It is hearing a song he loved and feeling my heart crack open all over again. It is the silence where his voice should be. It is the ache of knowing that lies and assumptions took him from me – not my actions, not my choices, not my love.

There is a particular kind of pain that comes from being judged by a version of yourself that does not exist. There is a particular kind of heartbreak that comes from being separated from a child you loved with every part of your being. And there is a particular kind of weight that comes from knowing that the truth – the real truth – was ignored.

But I am still here.

I am still his mother

I am still the woman who raised two children on her own, who graduated high school, who became a CNA, who built a life through hard work and love.

I am still the mother who never used substances while I was being a mother, who protected her pregnancy, who cared for her son with devotion and tenderness.

I am still the mother who made his food from scratch, who taught him sign language, who counted numbers and sang ABCs with him, who spent every day loving him with her whole heart. I am still the mother who loves Jaxson with depth that cannot be measured.

This letter is my truth, it is my voice, it the reality of who I am and the mother I have always been

Respectfully

Perrielin Sessions

Perriewinkle37@gmail.com

(707)372-3064

113 Calle Jalisco

Solano, Vacaville

California 95687

Perrielin Sessions
113 Calle Jalisco
Solano, Vacaville
CA 95687
(707)372-3064
Case# 2:25-CV-02936



Authorities supporting the discovery/due-process basis include California Rules of Court, rule 5.546, Welfare and Institutions Code section 355, and dependency due-process/cross-examination principles. (California Courts)

CLAIM: MOTHER WAS DENIED DUE PROCESS WHEN THE DEPARTMENT USED ALLEGED DRUG-TESTING INFORMATION AGAINST HER WHILE REFUSING TO PROVIDE HER THE UNDERLYING TEST RESULTS NEEDED TO VERIFY, CHALLENGE, OR REBUT THAT EVIDENCE.

Mother Perrielin Sessions was denied due process because the Department required her to submit to drug testing, used alleged testing compliance and/or testing results as evidence against her, but never provided her with a copy of any test result despite her requests. Instead of producing the records, a social worker directed Mother to contact the testing laboratory. When Mother contacted the laboratory, the laboratory refused to provide or discuss the results, stating in substance that it did not have to release or discuss them with her.

This procedure deprived Mother of a meaningful opportunity to know and challenge the evidence being used against her. Drug-testing evidence is scientific evidence. If the Department intended to rely on alleged positive tests, missed tests, diluted specimens, refusals, noncompliance, or testing history to support removal, continued detention, restricted visitation, termination of reunification services, denial of section 388 relief, or termination of parental rights, then Mother was entitled to access the underlying records necessary to evaluate the reliability and meaning of that evidence.

The withheld records included, or should have included, the actual laboratory reports, collection dates, specimen type, chain-of-custody documentation, confirmation-testing information, cutoff levels, specimen-validity findings, missed-test logs, lab methodology, and any provider records showing whether a test was negative, positive, dilute, invalid, missed, refused, or otherwise disputed. Without those records, Mother could not determine whether the Department's summaries were accurate, whether the results were confirmed or presumptive, whether the correct person was tested, whether proper procedures were followed, whether a result was scientifically reliable, or whether the Department was mischaracterizing testing events as proof of parental risk.

California dependency proceedings are civil in form, but the liberty interest at stake is fundamental. A parent facing state interference with custody, reunification, visitation, and parental rights must be given a meaningful opportunity to be heard. That opportunity is not

meaningful when the State relies on scientific or quasi-scientific evidence while withholding the underlying records needed to test its accuracy.

California Rules of Court, rule 5.546 requires prehearing disclosure of discoverable material in dependency proceedings, including favorable evidence and, upon request, scientific test results and expert or professional reports within the petitioner's possession or control. Welfare and Institutions Code section 355 and related dependency due-process principles also recognize that parents must have a fair opportunity to confront, cross-examine, and challenge adverse evidence contained in social-worker reports or used as the basis for juvenile-court findings.

The Department's referral of Mother to the laboratory did not cure the violation. The Department and its contracted testing provider were the entities generating and using the testing information in the dependency case. Once the laboratory refused to provide Mother the records, the Department remained responsible for producing the records if it intended to rely on them in court. A parent cannot be required to comply with testing and then be denied access to the very results later used to judge compliance, credibility, risk, and parental fitness.

The prejudice was substantial. The Department's testing narrative became part of the evidentiary foundation for continued state intervention and later adverse findings. Mother was forced to defend against conclusions she could not verify. The juvenile court was allowed to consider testing-related allegations without Mother having a meaningful ability to inspect the underlying evidence, challenge the accuracy of the Department's summaries, cross-examine informed witnesses, or present a complete rebuttal. This infected the fairness of the proceedings.

Accordingly, the juvenile court's reliance on undisclosed drug-testing evidence, testing summaries, or alleged noncompliance violated Mother's right to due process. The resulting findings should not have been used to support continued detention, visitation restrictions, termination of reunification services, denial of section 388 relief, or termination of parental rights without first requiring full disclosure of the underlying testing records and giving Mother a meaningful opportunity to challenge them.

Perrielin Sessions
05-29-2026
Perriewinkle37@gmail.com

CLAIM: MOTHER'S PARENTAL RIGHTS WERE VIOLATED BECAUSE THE COURT TERMINATED HER RIGHTS DESPITE STRONG EVIDENCE OF CHANGED CIRCUMSTANCES, CONSISTENT VISITATION, AND A BENEFICIAL PARENT-CHILD RELATIONSHIP.

Mother Perrielin Sessions was denied due process and the protection required by California dependency law when the juvenile court terminated her parental rights despite substantial evidence that she had changed her circumstances, maintained consistent contact with P.P., and shared a strong, beneficial, and constitutionally protected parent-child relationship with her son.

This case did not involve an absent parent, an indifferent parent, or a parent who failed to preserve a relationship with her child. Mother never missed visits. She consistently appeared, remained bonded to P.P., parented him within the limits imposed by the court's visitation orders, and maintained a relationship that the juvenile court itself recognized as unusually strong. The court acknowledged, in substance, that this was one of the strongest parent-child bonds seen in that courtroom in a very long time. That finding should have carried constitutional and statutory weight.

Under Welfare and Institutions Code section 388, a parent may seek modification of prior orders based on changed circumstances or new evidence. Section 388 exists as an important safeguard in dependency proceedings because parental rights do not become meaningless simply because reunification services have ended. The California Supreme Court has described section 388 as an "escape mechanism" that allows the court to consider new information before permanently severing a family relationship. (In re Marilyn H. (1993) 5 Cal.4th 295.) Here, Mother presented evidence showing changed circumstances and continued parental commitment, but the court failed to give that evidence the weight required before imposing the most extreme remedy available in dependency law.

The court also failed to properly apply the beneficial parental relationship exception under Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i), as clarified by In re Caden C. (2021) 11 Cal.5th 614. Caden C. requires the court to consider whether the parent maintained regular visitation and contact, whether the child would benefit from continuing the relationship, and whether termination would be detrimental to the child when balanced against the benefits of adoption. The inquiry is not whether the parent is perfect. It is not whether the parent can immediately resume full physical custody. It is not

whether adoption offers administrative finality. The question is whether the child has a substantial, positive, emotional attachment to the parent such that severing the relationship would harm the child.

Mother satisfied the first element because she maintained regular visitation and contact. Mother satisfied the second element because the evidence showed a strong and beneficial bond between Mother and P.P. Mother also satisfied the third element because the complete and permanent destruction of that bond created a serious risk of emotional detriment. When a court acknowledges an exceptionally strong parent-child bond but still terminates parental rights without explaining why complete legal severance is necessary to protect the child, the ruling becomes constitutionally and legally defective.

Parental rights are not limited to the ability to physically possess or immediately care for a child. The parent-child relationship includes companionship, affection, identity, emotional security, family belonging, and continuity of love. Too often, dependency courts define parental rights too narrowly, reducing them to physical custody alone. But companionship is also protected by this Nation's values and constitutional traditions, even when a child is not physically placed with the parent. A parent may be unable to immediately regain custody and still remain deeply important to the child's emotional life.

The question the court was required to confront was not merely whether adoption could provide stability. The real question was: when is a parent-child relationship so harmful that severing it completely is the only remedy that can protect the child? On this record, that showing was not made. The evidence showed love, consistency, attachment, and benefit. It did not show that Mother's relationship with P.P. was so dangerous, destabilizing, or harmful that the only lawful remedy was permanent legal erasure.

The juvenile court's ruling improperly elevated adoption stability over the existing parent-child relationship without adequately weighing the constitutional and emotional harm caused by severance. The law does not permit termination of parental rights merely because adoption is preferred in the abstract. Where a parent has maintained regular visitation, where the child benefits from the relationship, and where severance would be detrimental, the court must preserve the relationship through a less destructive permanent plan, such as guardianship or another legally secure arrangement that does not permanently extinguish the parent-child bond.

Because Mother presented evidence of changed circumstances, maintained consistent visitation, and shared a powerful beneficial relationship with P.P., the termination of her parental rights violated due process, misapplied Welfare and Institutions Code sections

388 and 366.26, and failed to comply with the standards set forth in In re Marilyn H. and In re Caden C. The order terminating parental rights should therefore be vacated, or at minimum reconsidered under the correct legal standard with full weight given to Mother's changed circumstances, consistent visitation, and P.P.'s substantial emotional bond with her.

Perrielin Sessions 05-29-2026
[signature]
Perriewinkle37@gmail.com
Case#2:25-CV-02936
(707) 372-3064
~~113 Calle Call~~
113 Calle Jalisco
Solano, Vacaville
ca 95687

# Perrielin Session

113 Calle Jalisco Vacaville, CA 95687 Phone: 707-372-3064 Email: perriewinkle40@outlook.com

**Date:** 12/30/2025

**Clerk of Court** United States District Court Eastern District of California 501 I Street Sacramento, CA 95814

**Re:** Notice to the Court Regarding Material Contradictions and Judicial Misconduct Concerns **Case:** *Session v. Solano County Health & Social Services*, Case No. **2:25-cv-02936**

To the Honorable Court:

I respectfully submit this letter to notify the Court of **material contradictions, inconsistent factual findings, and potential judicial misconduct** arising from the state-court proceedings in *In re P.P.*, as reflected in the trial-court rulings and the two appellate opinions issued by the California Court of Appeal, First Appellate District. These contradictions directly relate to the constitutional claims presented in my federal action and are being submitted to ensure the Court has a clear and accurate record of the issues raised.

This notice is not a motion and does not request immediate action. It is intended to preserve the record and assist the Court in understanding the procedural and factual irregularities that form the basis of my federal claims.

# I. Contradictions Concerning Drug Evidence

Across the trial court and both appellate opinions, the treatment of the alleged methamphetamine ingestion changed in ways that are inconsistent and unexplained:

- The **first appellate opinion** acknowledged that the hospital performed only a *presumptive* drug test, that no confirmatory test was conducted, that this increased

- The **second appellate opinion** treated missed tests as dispositive proof of unfitness, without addressing the earlier appellate findings.

This pattern reflects inconsistent legal standards applied to identical conduct.

# IV. Contradictions Regarding the Home Environment

The condition of the paternal grandparents' home was treated inconsistently:

- The **first appellate opinion** described the home condition as contextual and not determinative.
- The **trial court** relied on the same condition without updated findings.
- The **second appellate opinion** treated the same stale condition as ongoing justification for termination, without addressing whether circumstances had changed.

This raises concerns about reliance on outdated or unexamined evidence.

# V. Contradictions in Application of the Parental-Benefit Exception

The record shows conflicting interpretations of the parent-child relationship:

- The **first appellate opinion** acknowledged bonding and consistent visitation as meaningful.
- The **trial court** later found no parental-benefit exception.
- The **second appellate opinion** affirmed that finding without reconciling the earlier recognition of bonding.

This inconsistency affects the integrity of the §366.26 analysis.

# VI. Concerns Regarding the §388 Petition

The mother argued that the trial court applied the wrong legal standard to her §388 petition. The second appellate opinion rejected this argument but did not explain how the correct standard was applied or reconcile the earlier findings of progress.

This raises concerns about the adequacy of judicial reasoning and the proper application of statutory standards.

# Conclusion

The contradictions outlined above demonstrate a pattern of inconsistent factual findings, shifting legal standards, and unexplained reversals across the trial court and both appellate opinions. These issues are central to the constitutional violations raised in my federal case, including due-process violations, arbitrary adjudication, and the failure to provide a fair and consistent application of law.

I respectfully request that this notice be entered into the record for the Court's consideration as it reviews the claims presented in this matter.

Thank you for your attention.

Respectfully submitted, Perrielin Session Plaintiff, Pro Se

01-05-2026

# Ground One: Violation of the Fourteenth Amendment – Procedural Due Process

## A. Constitutional Right

The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, or property without due process of law. The liberty interest in the care, custody, and companionship of one's child is a fundamental right recognized by the U.S. Supreme Court. *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000).

## B. Factual Basis

1. **Suppression of Exculpatory Evidence**
    a. The Clerk's Transcript omitted Petitioner's daughter Kellie's letter, which directly contradicted the agency's allegations and supported reunification.
    b. This omission was not accidental but part of a pattern of record tampering and suppression, depriving Petitioner of a full and fair appellate review.
2. **Contradictory Judicial Findings**
    a. Minute orders and transcripts reveal irreconcilable contradictions: the court acknowledged Petitioner's compliance with case plan requirements in one hearing, yet in subsequent orders cited "noncompliance" as the basis for continued removal.
    b. These contradictions were never reconciled, leaving Petitioner without a coherent statement of reasons for the deprivation of custody.
3. **Ignored Medical and Rehabilitative Evidence**
    a. Petitioner submitted medical records, testimonial declarations, and rehabilitative program certificates demonstrating fitness and progress.
    b. The juvenile court ignored these submissions, failing to consider material evidence that bore directly on the constitutional liberty interest at stake.
4. **Appellate and Supreme Court Closure**
    a. The California Court of Appeal denied relief in *In re P.P.* without addressing the suppressed evidence or contradictions.
    b. The California Supreme Court denied review on [insert date], closing the case and exhausting state remedies.

### C. Legal Argument

The state courts' actions violated due process in three ways:

- **Record Tampering and Suppression**: By omitting Kellie's letter and other exculpatory materials, the state deprived Petitioner of a meaningful opportunity to be heard. See *Brady v. Maryland*, 373 U.S. 83 (1963) (suppression of favorable evidence violates due process).
- **Arbitrary and Contradictory Findings**: The juvenile court's irreconcilable orders deprived Petitioner of notice of the true grounds for removal, violating the requirement of fundamentally fair procedures.
- **Failure to Consider Material Evidence**: Ignoring medical and rehabilitative evidence denied Petitioner the fair weighing of evidence required in proceedings implicating fundamental rights. See *Mathews v. Eldridge*, 424 U.S. 319 (1976).

### D. Prejudice

These violations were not harmless. The suppressed and ignored evidence directly supported reunification and undermined the agency's allegations. Had the courts considered the full record, there is a reasonable probability that Petitioner's child would not have been removed or that reunification would have been ordered.

### E. Relief Requested

Petitioner respectfully requests that this Court issue a writ of habeas corpus vacating the unconstitutional dependency orders, and order reunification or such other relief as justice requires.

## Ground Two: Violation of the Fourteenth Amendment – Equal Protection

### A. Constitutional Right

The Equal Protection Clause of the Fourteenth Amendment prohibits states from treating similarly situated individuals differently without a rational basis, and especially forbids discrimination that burdens fundamental rights. *Plyler v. Doe*, 457 U.S. 202, 216 (1982).

## B. Factual Basis

1. Petitioner was subjected to harsher treatment than similarly situated parents who had comparable or more serious allegations.
2. The juvenile court imposed heightened requirements and discounted Petitioner's compliance, while granting reunification or leniency to others in materially similar circumstances.
3. Agency reports and court findings reveal bias in how Petitioner's progress was characterized versus other parents, despite equivalent or stronger evidence of rehabilitation.
4. This disparate treatment was not tied to any legitimate state interest but reflected systemic bias and arbitrary decision-making.

## C. Legal Argument

- The state's differential treatment of Petitioner lacked a rational basis and burdened her fundamental right to family integrity.
- By holding Petitioner to a higher standard and disregarding her compliance, the court violated the Equal Protection Clause.
- The U.S. Supreme Court has recognized that when fundamental rights are implicated, heightened scrutiny applies. *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942).

## D. Prejudice

The unequal treatment directly resulted in the continued removal of Petitioner's child, despite evidence that would have supported reunification under the same standards applied to others.

## E. Relief Requested

Petitioner requests that this Court vacate the unconstitutional orders and direct relief consistent with equal protection guarantees.

# Ground Three: Violation of the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq.

### A. Statutory Right

ICWA establishes minimum federal standards to protect the rights of Indian children, families, and tribes in child custody proceedings. 25 U.S.C. § 1902. State courts must comply with ICWA's notice, inquiry, and evidentiary requirements. 25 U.S.C. §§ 1912, 1914.

### B. Factual Basis

1. The state court failed to conduct proper inquiry into the child's potential Indian heritage, despite information triggering ICWA's application.
2. Required notices were not sent to all relevant tribes and the Bureau of Indian Affairs.
3. The court proceeded without confirming compliance with ICWA's heightened evidentiary standards for removal and termination.
4. These omissions violated both federal law and Petitioner's due process rights.

### C. Legal Argument

- ICWA violations are federal statutory violations enforceable through habeas corpus. See 25 U.S.C. § 1914.
- The failure to provide notice and apply ICWA's standards renders the dependency orders invalid.
- Federal courts have recognized that ICWA compliance is mandatory, not discretionary. *In re Desiree F.*, 83 Cal. App. 4th 460, 472 (2000).

### D. Prejudice

The failure to comply with ICWA deprived Petitioner, her child, and potentially the child's tribe of critical rights, undermining the legitimacy of the entire proceeding.